**Robert and Leta MITCHELL, Appellants,**

v.

**Arturo GARZA, Appellee.**

**No. 001–06–00959–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 6, 2007.

George W. Dana, Attorney at Law, Houston, TX, for Appellants.

Martha Failing, Houston, TX, for Appellee.

Panel consists of Justices TAFT, HANKS, and HIGLEY.

## OPINION

GEORGE C. HANKS, JR., Justice.

We withdraw our opinion and judgment issued on October 18, 2007 and issue this one in its stead. We deny appellants' motion for rehearing.

Robert and Leta Mitchell appeal the trial court's grant of a take-nothing judgment in favor of Arturo Garza. In three issues, the Mitchells contend that the trial

court erred in (1) refusing to declare the existence of an easement by estoppel, (2) refusing to issue a permanent injunction to remove the fence that interferes with their easement, and (3) denying their request for attorneys' fees. We affirm.

## Background

The Mitchells purchased the house located at 7823 Capitol ("the Mitchell property") in 1959. Robert's mother and stepfather had been living in the house since at least 1954 and continued to do so after the Mitchells' acquisition. A single, shale-covered driveway was located between the Mitchell property and the adjacent house at 7827 Capitol ("the adjacent property"). In order to use their portion of the driveway, the Mitchells believe that they had to use part of the driveway on the adjacent property.

Robert's mother and stepfather continued to live in the Mitchell property until Robert's mother died and his stepfather was moved to a nursing home. For a couple of years after that, Robert's step-grandfather lived in the house and also used the driveway. When Robert's step-grandfather died, tenants began occupying the Mitchell property. Around 1980, the Mitchells stopped renting the Mitchell property, and it was vacant. While vacant, the Mitchells often visited to make repairs, and, in 1986, they began storing furniture in the house. They generally made monthly trips to the Mitchell property with six months being the longest period without a visit. Also, at one point, the owner of the adjacent property had a portion of the driveway asphalted, during which some asphalt spilled over and covered a portion of the driveway on the Mitchell property.

In 1989, the City of Houston replaced the curb in front of the Mitchell property. In the process of replacing the curb, the City neglected to leave an opening to the driveway. The Mitchells wrote a letter requesting that the City fix the curb opening to the driveway. Soon thereafter, the City restored the opening.

Garza lived in the neighborhood since 1988 and bought the adjacent property in 2002. He testified that he thought the Mitchell property was abandoned because the "the grass [was] high" and he "hardly" saw anyone there. Garza also testified that, when he did see people at the Mitchell property, they were parked on the street. He indicated that he never talked to anyone that lived at the Mitchell property about their using the part of the driveway that was located on his property. Around 2003, Garza built a chain link fence on his portion of the driveway. The fence left the Mitchells unable to drive a vehicle to the back of the Mitchell property or to open a car door when parked between the house and the fence. The Mitchells cannot legally park on the street because of a nearby fire hydrant and also cannot legally park in the front of the driveway because they would be partially on the sidewalk. Around 2005, the Mitchells began renting out the Mitchell property again, and their tenants, as of the time of trial, were parking on the sidewalk.

The Mitchells filed suit against Garza, seeking declaratory and injunctive relief. Specifically, the Mitchells argued that, because they have used the driveway for more than 50 years, they acquired an easement on the driveway, either by prescription, express grant, implication, necessity, or estoppel. They alleged that by installing the fence on the driveway, Garza trespassed onto and violated their use and enjoyment of the easement. The Mitchells sought to have the trial court declare the existence of the easement and issue an injunction mandating that Garza permanently remove the fence. Following a bench trial, the trial court entered a take-

nothing judgment on the Mitchells' claims for relief. The Mitchells now appeal.

## Easement by Estoppel

In issue one, the Mitchells argue that the trial court erred in refusing to declare the existence of an easement by estoppel. Specifically, the Mitchells argue that the evidence demonstrated their entitlement to an easement by estoppel and the trial court erred by not entering a judgment declaring the existence of such an easement. We disagree.

### Standard of Review

In a nonjury trial, where no findings of fact or conclusions of law are filed or requested, the trial court's judgment implies all findings necessary to support it, provided the necessary findings are raised by the pleadings and supported by the evidence. *Whaley v. Cent. Church of Christ of Pearland,* 227 S.W.3d 228, 230–31 (Tex.App.-Houston [1st Dist.] 2007, no pet.). However, because the record on appeal contains a full reporter's record, the Mitchells may challenge the trial court's implied findings for legal and factual sufficiency, under the same standards that govern challenges to a jury's findings. *Id.* at 231. To prevail, the Mitchells must show that the trial court's judgment cannot be sustained by any theory raised by the evidence. *Id.*

When a party attacks the legal sufficiency of an adverse finding on an issue on which it has the burden of proof, the party must demonstrate on appeal "that the evidence establishes, as a matter of law, all vital facts in support of the issue." *Dunn v. Dunn,* 177 S.W.3d 393, 396–97 (Tex.App.-Houston [1st Dist.] 2005, pet. denied) (quoting *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex.2001)). A matter-of-law challenge requires us first to examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Id.* If no evidence supports the finding, we will then examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.* We will sustain the matter-of-law challenge only if the contrary proposition is conclusively established. *Id.*

Where a party attacks the factual sufficiency of an adverse finding on an issue on which he has the burden of proof, he must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem.,* 46 S.W.3d at 242. We must consider and weigh all of the evidence and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.* In doing so, the court of appeals must "detail the evidence relevant to the issue" and "state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict." *Id.* (quoting *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986)).

### Analysis

To establish the existence of an easement by estoppel, sometimes called *estoppel in pais,* the Mitchells had the burden of proving the following elements:(1) the owner of the servient estate [here, the adjacent property] communicated a representation, either by words or conduct, to the promisee [here, the Mitchells]; (2) the promisee believed the communication; and (3) the promisee relied on the communication. *See Storms v. Tuck,* 579 S.W.2d 447, 452 (Tex.1979). These elements apply at the time the communication creating the alleged easement is made. *See Lakeside Launches, Inc. v. Austin Yacht Club, Inc.,* 750 S.W.2d 868,

872–73 (Tex.App.-Austin 1988, writ denied). " '[T]he exact nature and extent of the doctrine of estoppel in pais have not been clearly defined.' " *See Mack v. Landry*, 22 S.W.3d 524, 528 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (quoting *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 209 (Tex.1962)). Particularly important in our analysis is that no easement by estoppel may be imposed against a subsequent purchaser for value, who has no notice, actual or constructive, of the easement claimed. *Lakeside Launches*, 750 S.W.2d at 873. Therefore, to assert their right to an easement against Garza, the Mitchells had the burden of proving that Garza had actual or constructive notice of an existing easement or that the easement was created while Garza was the owner of the adjacent property.

▮ We begin by considering the Mitchells' legal sufficiency challenge. Garza testified that he has lived in the neighborhood since 1988 and purchased the adjacent property in 2002, but had only occasionally seen the Mitchells at the Mitchell property and was not aware that they or their predecessors were using the driveway. He assumed the house was abandoned due to its unkempt lawn and infrequency of visitors. This is legally sufficient evidence to support the implied finding that Garza was a purchaser for value without notice of the Mitchells' easement.

▮ We also must determine if there is evidence that an easement by estoppel was created during Garza's ownership of the adjacent property. The Mitchells testified that they never discussed their use of the driveway with anyone. Likewise, Garza testified that he never talked with anyone from the Mitchell property about using the driveway. Furthermore, no one complained when Garza was installing the fence, which Leta Mitchell admitted was properly placed on Garza's property line. We hold that there was legally sufficient evidence to support the trial court's implied finding that an easement by estoppel was not established while Garza was the adjacent property's owner.

▮ We must now consider whether there was factually sufficient evidence that Garza did not have notice of any existing easement when he purchased the adjacent property. Garza testified that he has lived in the neighborhood since 1988. In 1989, the Mitchells were successful in having the City of Houston restore the curb opening to the driveway after the City paved a curb that blocked their access to the Mitchell property's driveway. Furthermore, Leta testified that they generally made monthly trips to the Mitchell property, with six months being the longest period without a visit. They continued to make repairs to the Mitchell property, including the installation of siding in 1992 and new pipes beginning in 2001. The Mitchells also contend that the asphalt, which covers a portion of their driveway, is proof of a common use of the driveway.[1]

In contrast, Garza testified that, in the time he had lived in the neighborhood, he had only occasionally seen the Mitchells at the Mitchell property, and he was not aware that they or their predecessors were using the driveway. During the years when the Mitchell property was being repaired and used for furniture storage, the driveway was not used by the Mitchells

---

1. We recognize that the Mitchells emphasize Texas Transportation Code Section 545.302, which makes it illegal to park on a sidewalk or within 15 feet of a fire hydrant. TEX. TRANSP. CODE ANN. § 545.302(a)(2), (b)(2) (Vernon 1999). While such a law certainly creates a parking issue for the Mitchells and their tenants, it does not bear on whether an easement by estoppel has been created.

each time they visited, and they often parked on the street. Garza also testified that he believed the Mitchell property was abandoned because of its unkempt lawn and infrequency of visitors. Garza testified that the previous owner of the adjacent property poured the asphalt, and, when he bought the adjacent property, the seller told him that the driveway belonged to the adjacent property. We hold that there is factually sufficient evidence to support the trial court's implied finding that Garza lacked actual or constructive notice of the Mitchells' alleged easement by estoppel.

We next determine if there is factually sufficient evidence to support the trial court's implied finding that the Mitchells did not acquire an easement by estoppel while Garza owned the adjacent property. To have an easement by estoppel, the Mitchells had the burden of proving that Garza communicated a representation, either by words or conduct, to them indicating a right to use the driveway and that the Mitchells believed in and relied on the communication. *See Storms,* 579 S.W.2d at 452. The evidence shows that the Mitchells never had a conversation with Garza concerning their use of the driveway.

However, acquiescing behavior or the failure to object by a servient estate may be conduct that gives rise to a representation, if the dominant estate relied on this conduct in a way that should preclude the servient estate from denying it. *See Wallace v. McKinzie,* 869 S.W.2d 592, 595–96 (Tex.App.-Amarillo 1993, writ denied). Thus, we look to see whether any acquiescence or failure to object on Garza's part represented a right to use the driveway and, if so, whether the Mitchells believed in and relied on any such representation.

After Garza bought the adjacent property in 2002, the Mitchells continued to re-

pair and fix-up the Mitchell property. Garza testified that he sometimes came home from work early and saw the Mitchells at the Mitchell property. However, before the fence was erected, when they were visiting, the Mitchells usually parked in the street or in the front of the driveway, not in the driveway. The Mitchells' daughter, Carol Hughes, asked Garza to move his vehicles when they were blocking the driveway. Garza moved his vehicles once, and he actually drove Carol's car around his vehicles once, but he did not move his vehicles the third time he was asked. The evidence is factually sufficient to support the trial court's implied finding that Garza's behavior did not represent to the Mitchells a right to use the driveway. Because we hold that a right to use the driveway was not represented to the Mitchells, we need not address whether they believed in and relied on such a representation.

The evidence is not so contrary to the trial court's take-nothing judgment as to render that judgment clearly wrong or unjust. Accordingly, we hold that the trial court did not err in refusing to grant the Mitchells an easement by estoppel, and we overrule the Mitchells' first issue. Having overruled issue one, we need not address issues two and three.

## Conclusion

We affirm the judgment of the trial court.