**Opinion issued March 26, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00671-CV

———————————

**JOEL A. KOLB AND TRACEY A. KOLB, Appellants**

**V.**

**EDWARD C. SCARBROUGH, INDIVIDUALLY AND AS TRUSTEE FOR ECS TRUST, ECS TRUST AND CHERYL SCARBROUGH, Appellees**

---

**On Appeal from the 268th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 13-DCV-205374**

---

## MEMORANDUM OPINION

The Kolbs sued their neighbors, the Scarbroughs, alleging that the Scarbroughs' underground drainage system and other property improvements caused excessive erosion on their lower-elevation lot. The Kolbs' petition included claims for negligence, gross negligence, violations of the Water Code, nuisance,

and trespass. In addition to monetary damages, the Kolbs sought a permanent injunction requiring the Scarbroughs to "implement a plan to alter the grade" of their property "to avoid future flooding."

The Scarbroughs moved for summary judgment on all claims. They contended that the previous owners of the Kolb property gave them permission to install the drainage system before the property was sold to the Kolbs, thereby creating an easement by estoppel to which the Kolbs continued to be bound. They also asserted that the Kolbs had no evidence of causation or damages.

The trial court granted the Scarbroughs' summary-judgment motion without specifying the grounds for the ruling and entered a final judgment dismissing all claims against the Scarbroughs.

In two issues, the Kolbs contend that the trial court erred by (1) granting summary judgment to the Scarbroughs on the trespass claim because discrepancies between the affidavit and earlier deposition testimony of David Easterling, who sold his property to the Kolbs, created a fact issue and (2) granting final judgment against them on their remaining claims because the Scarbroughs' summary-judgment motion did not address those claims.

We affirm.

## Background

The Scarbroughs purchased their residential lot in 2001, began building a home in 2005, and moved into the home in 2009. Their neighbors, the Easterlings, owned the lot next door, which was at a lower elevation. In 2011, the Easterlings sold their lot to the Kolbs.

The entire neighborhood is situated on naturally sloping terrain, and rain-water runoff is an issue. The rain water naturally flows from higher lots, through the Scarbrough lot, to the Kolb lot, and down into a natural ravine within the Kolbs' property. The Kolb lot is within a designated 100-year flood zone. When the Kolbs bought it, though, the area was experiencing a "drought."

David Easterling testified that the ravine appeared as through it had been there for many years. Tree roots near the edge of the ravine were exposed and had grown bark, indicating that the soil had been washed away a long time ago. Easterling also testified that the Easterling/Kolb lot had a low spot that would hold water after each rain. The "bog," which was approximately 10 feet in diameter, became a breeding ground for mosquitoes.

Ed Scarbrough installed various drainage inlets and pipes on his property to address water runoff and erosion. Some pipes drained towards a river behind his house; others drained in the opposite direction towards the ravine on the Kolb property. Ed testified that he had concerns about the bog next door and persistent

mosquito problem. He also was concerned that the ravine on the Easterling/Kolb lot was steadily expanding towards his property line and would, eventually, encroach on his land. Due to these concerns, in 2011, Scarbrough approached Easterling and offered to install a drainage system on the Easterling lot, at the Scarbroughs' expense, if Easterling agreed. Easterling told Scarbrough that he "could do whatever he wanted on my property to make the drainage improvements that he envisioned making, as long as he was paying for the cost." These conversations occurred shortly before the Easterlings sold their property to the Kolbs.

When the Kolbs were doing a pre-sale "walk-through" of the property, they saw Ed Scarbrough using wooden forms and concrete to construct a bulkhead at the ravine. Joel Kolb testified that, on that day, he also saw two underground pipes draining into the ravine. Kolb admitted that Ed told him he was doing the work on the Easterling—soon to be Kolb—land to address drainage issues and erosion. The Kolbs did not object to the work.

After the Kolbs moved in, their initially friendly relationship with the Scarbroughs deteriorated. The property line between their lots was within a gas-pipeline easement, and, due to easement restrictions, was not marked by a fence. Disputes arose concerning the exact location of the property line. The Kolbs believed that the Scarbroughs were physically entering their property without

4

permission and adding landscaping on the Kolbs' side of the property line. Additionally, the Kolbs began to question whether the underground drainage pipes the Scarbroughs installed were harming their property.

There were two drainage pipes that were of particular concern. One began and ended within the Kolbs' property—it drained the standing water from the bog to the ravine. The other pipe was connected to the Scarbroughs' underground irrigation system, ran across the property line between the two lots, and emptied into the ravine near the bulkhead the Kolbs saw Scarbrough building.

Eventually—though without discussing the issue with the Scarbroughs—Tracey Kolb dug up the two pipes, broke them apart, and filled them with concrete. For a short time afterwards, Scarbrough brought his drainage system up to the surface and added an exit point to the piping about 10 feet on his side of the property line. That exit point was later capped at the Kolbs' insistence. Once the two pipes were plugged or capped, the water runoff returned to the surface-level and again flowed across the Scarbrough property, down to the Kolb property, and into the Kolbs' ravine. The bulkhead remained.

After the Kolbs disabled the two underground drainage pipes, they sued the Easterlings and Scarbroughs, asserting that the Scarbroughs' diversion of water caused damage to their property, including flooding and excessive erosion. David Easterling was deposed. The Easterlings were later nonsuited. Several months after

5

that, the Scarbroughs filed a motion for summary judgment, combining no-evidence and traditional summary-judgment challenges in the same motion. They included within their summary-judgment evidence an affidavit from David Easterling stating that he gave the Scarbroughs permission to install the underground drainage system. The trial court granted the Scarbroughs' summary-judgment motion without specifying the basis for its ruling.

The Kolbs timely appealed.

## Standard of Review

The standard for reviewing a summary judgment is de novo. *Provident Life & Accident Ins. Co .v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *see* TEX. R. CIV. P. 166a. "The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and it is entitled to judgment as a matter of law." *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). "In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true." *Id.* at 548–49. "Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor." *Id.* at 549.

When a defendant moves for summary judgment, he must either disprove at least one essential element of the plaintiff's cause of action or plead and conclusively establish each essential element of his affirmative defense. *Cathey v.*

6

*Booth*, 900 S.W.2d 339, 341 (Tex. 1995); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). If a defendant conclusively establishes his affirmative defense, the burden shifts to the nonmovant to raise a genuine issue of material fact to defeat summary judgment. *Centeq Realty*, 899 S.W.2d at 197; *Lujan v. Navistar Fin. Corp.*, 433 S.W.3d 699, 704 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *see Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997).

The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam); *Lujan*, 433 S.W.3d at 704. To determine if the nonmovant has raised a fact issue, we review the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002).

Normally, when a party includes both traditional and no-evidence points in his summary-judgment motion, we review the no-evidence points first. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *Brookshire Katy Drainage*

*Dist. v. Lily Gardens, LLC*, 333 S.W.3d 301, 307 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *see* Tex. R. Civ. P. 166a(i). If no-evidence summary judgment was properly granted, we do not reach the traditional summary-judgment arguments. *Brookshire Katy Drainage Dist.*, 333 S.W.3d at 307. Thus, in reviewing whether summary judgment was properly granted to the Scarbroughs, we start with whether the Kolbs produced more than a scintilla of evidence on each element of their asserted causes of action.

### No-Evidence Summary Judgment

The Kolbs asserted five causes of action against the Scarbroughs: negligence, gross negligence, violations of the Water Code, nuisance, and trespass. In their summary-judgment motion, the Scarbroughs argued that the Kolbs "have no evidence that they have suffered injury[,] as the damage caused by the natural flow of water was actually stopped by the drainage improvements." Additionally, they argue that the Kolbs "have no evidence that increase in the flow of water allegedly related to the construction of the Scarbrough home . . . caused any erosion . . . or . . . damages to the Kolbs at all." Thus, for those causes of action that require evidence of causation and damages, we must determine whether the Kolbs presented more than a scintilla of evidence of those two elements.

## A.    Negligence and gross negligence

A negligence cause of action has three elements: (1) a legal duty owed by one person to another, (2) a breach of that duty, and (3) damages proximately caused by the breach. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002); *Aleman v. Ben E. Keith Co.*, 227 S.W.3d 304, 310 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

The Scarbroughs argued in their summary-judgment motion that the Kolbs presented no evidence of causation or damages. The Kolbs responded by referencing a report prepared by their retained expert, which stated as follows:

> Erosion has taken place in the gully on the owners' property. This erosion is likely to have been caused from the concentration of stormwater runoff from the sub-surface drainage system while it was functional. In addition, the headwall has caused overland sheetflow to back up behind it and flow over, producing a waterfall effect. These factors would contribute to increased runoff within the gully compared to runoff allowed to flow across the ground surface and produce serious erosion issues.

According to the Kolbs, "This clearly establishes that Defendants' conduct in installing the drainage system and the headwall caused substantial and continued erosion."

The Scarbroughs argue that the "unsworn hearsay report" is no evidence and that the Kolbs failed to provide any other evidence of causation or damages. They raise this issue for the first time on appeal. We, therefore, must consider whether the Scarbroughs have waived their argument that the expert report is not competent

9

summary-judgment evidence. *See* TEX. R. APP. P. 33.1(a); *Bushnell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991).

The resolution of this issue depends on whether the alleged defect is one of form or substance. Form defects must be objected to at the trial court or are waived on appeal. TEX. R. CIV. P. 166a(f); *Seaprints, Inc. v. Cadleway Prop., Inc.*, 446 S.W.3d 434, 441 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Bastida v. Aznaran*, 444 S.W.3d 98, 104–05 (Tex. App.—Dallas 2014, no pet.). Substantive defects, however, may be raised for the first time on appeal. *Seaprints*, 446 S.W.3d at 441; *Bastida*, 444 S.W.3d at 105.

"The absence of an affidavit verifying a copy of the instrument attached as summary judgment proof amounts to no proof." *In re Estate of Guerrero,* No. 14–13–00580–CV, 2014 WL 4377465, at *10 (Tex. App.—Houston [14th Dist.] Sept. 4, 2014, no pet.) (mem. op.). Thus, unverified summary-judgment evidence is a substantive defect that can be raised for the first time on appeal. *Mansions in the Forest, L.P. v. Montgomery Cnty.*, 365 S.W.3d 314, 317 (Tex. 2012) (per curiam) (stating that "an unverified copy of a promissory note offered as summary judgment evidence, which was complained about for the first time on appeal" will not support summary judgment); *Perkins v. Crittenden*, 462 S.W.2d 565, 568 (Tex. 1970) (reversing summary judgment because copy of promissory note included in summary-judgment evidence was unverified, after holding that complaint

10

regarding substantive defect could be raised for first time on appeal); *see Blanche v. First Nationwide Mtg. Corp.*, 74 S .W.3d 444, 451 (Tex. App.—Dallas 2002, no pet.) (stating that "complete absence of authentication is a defect of substance"); *see also* Judge David Hittner & Lynne Liberato, *Summary Judgments in Texas: State and Federal Practice*, 46 Hous. L. Rev. 1379, 1470 (2010) ("Non-summary judgment evidence, such as unsworn witness statements, expert's reports, or unauthenticated documents . . . is not proper summary judgment evidence and cannot defeat a no-evidence summary judgment motion.").

Accordingly, the Kolbs' failure to attach an affidavit or otherwise authenticate their expert report is a substantive defect that the Scarbroughs can raise for the first time on appeal. *See Perkins*, 462 S.W.2d at 568; *Guerrero*, 2014 WL 4377465, at *10; *accord Mansions*, 365 S.W.3d at 317. Because the expert report is not verified, it is not competent summary-judgment evidence and cannot defeat the Scarbroughs' no-evidence motion. *Perkins*, 462 S.W.2d at 568. The Kolbs point to no other summary-judgment evidence on causation or damages and, without any, we conclude that the trial court did not err in granting summary judgment to the Scarbroughs on the negligence cause of action.

Because there was no evidence to support the negligence claim, the gross negligence claim also fails. *See Garay v. G.R. Birdwell Const., L.P.*, No. 01-13-01088-CV, 2014 WL 6680347, at *9 (Tex. App.—Houston [1st Dist.] Nov. 25,

11

2014, no pet.) (mem. op.); *Shell Oil Co. v. Humphrey*, 880 S.W.2d 170, 174 (Tex. App.—Houston [14th Dist.] 1994, writ denied).

## B.       Violations of Texas Water Code section 11.086

Section 11.086, "Overflow Caused by Diversion of Water," provides:

(a)      No person may divert or impound the natural flow of surface waters in this state, or permit a diversion or impounding by him to continue, in a manner that damages the property of another by the overflow of the water diverted or impounded.

(b)      A person whose property is injured by an overflow of water caused by an unlawful diversion or impounding has remedies at law and in equity and may recover damages occasioned by the overflow.

TEX. WATER CODE ANN. § 11.086 (West 2013). "The elements of the statutory cause of action are (1) a diversion or impoundment of surface water which (2) causes (3) damage to the property of the plaintiff landowner." *Kraft v. Langford*, 565 S.W.2d 223, 229 (Tex. 1978); *accord Bily v. Omni Equities, Inc.*, 731 S.W.2d 606, 611 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.).

Similar to the negligence claim, the only evidence the Kolbs offered that the Scarbroughs' diversion of water caused damage to their property was the unverified expert report. Because the report is not competent summary-judgment evidence, we conclude that the trial court did not err in granting summary judgment to the Scarbroughs on this cause of action.

12

## C.    Nuisance

"A private nuisance is a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Lethu Inc. v. City of Houston*, 23 S.W.3d 482, 489 (Tex. App.—Houston [1st Dist.] 2000, pet. denied); *Bily*, 731 S.W.2d at 611. Conduct that is "abnormal" and "out of place in the surroundings" will support a claim of private nuisance; the defendant's actions need not be negligent. *City of Tyler v. Likes*, 962 S.W.2d 489, 504 (Tex. 1997).

"[A] nuisance occurs in one of three ways: by (1) physical harm to property, such as by the encroachment of a damaging substance or by the property's destruction; (2) physical harm to a person [on his] property . . . ; and (3) emotional harm to a person from the deprivation of the enjoyment of [his] property . . . ." *Maranatha Temple, Inc. v. Enter. Prods. Co.*, 893 S.W.2d 92, 99 (Tex. App.—Houston [1st Dist.] 1994, writ denied). The Kolbs alleged only the first variety. Thus, to survive summary judgment on their claim, they were required to present more than a scintilla of evidence that the alleged nuisance caused physical harm to their property. *See id.*

Like with the other causes of action, the only evidence the Kolbs offered on causation and damages was the unverified expert report; therefore, the trial court did not err in granting summary judgment on this claim.

**D.    Trespass**

There are three elements to a trespass claim: (1) entry (2) onto the property of another (3) without the property owner's consent or authorization. *Envt'l. Processing Sys., L.C. v. FPL Farming Ltd.*, No. 12-0905, 2015 WL 496336, at *4 (Tex. Feb. 6, 2015) Stated differently, "[e]very unauthorized entry upon land of another is a trespass even if no damage is done." *Coinmach Corp. v. Aspenwood Apts. Corp.*, 417 S.W.3d 909, 920 (Tex. 2013) (quoting *Watson v. Brazos Elec. Power Coop.*,  918 S.W.2d 639, 645 (Tex. App.—Waco 1996, writ denied)); *Coastal Oil & Gas Corp. v. Garza Energy Trust*, 268 S.W.3d 1, 12 n.36 (Tex. 2008). The lack of damages evidence that resulted in no-evidence summary judgment on the Kolbs' other claims does not also defeat the trespass claim.

We overrule the Kolbs' second issue challenging summary judgment on all claims other than trespass. We turn next to whether the trial court erred in granting traditional summary judgment on that claim.

**Traditional Summary Judgment**

The Scarbroughs contend that they are not liable to the Kolbs for trespass because they received permission to install the drainage system from the previous owner, David Easterling. According to the Scarbroughs, the Easterlings' consent to the drainage system created an easement by estoppel, and the Kolbs—who purchased the land from the Easterlings—are bound by the easement.

14

## A.     Elements of easement by estoppel

Generally, the grant of an easement must be made in writing and cannot be created by a parol agreement. *Pick v. Bartel*, 659 S.W.2d 636, 637 (Tex. 1983); *Stallman v. Newman*, 9 S.W.3d 243, 247 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). The equitable doctrine of easement by estoppel is an exception to the writing requirement. *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 209 (Tex. 1962); *Horner v. Heather*, 397 S.W.3d 321, 325 (Tex. App.—Tyler 2013, no pet.). "The owner of land, under some circumstances, may be estopped to deny the existence of an easement by making representations which have been acted upon by a purchaser to his detriment." *Drye*, 364 S.W.2d at 209–10 (noting that doctrine has been applied when party allows other party to expend money erecting drainage ditch across his land).

There are three elements to an easement by estoppel: (1) the owner of the servient estate (here, the Easterling/Kolb property) communicated a representation, either by words or conduct, to the promisee (here,  Scarbrough); (2) the promisee believed the communication; and (3) the promisee relied on the communication. *See Storms v. Tuck*, 579 S.W.2d 447, 452 (Tex. 1979); *Mitchell v. Garza*, 255 S.W.3d 118, 122 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

An easement by estoppel may be imposed against a subsequent purchaser for value if the subsequent purchaser had notice—actual or constructive—of the

15

easement claimed, *Mitchell*, 255 S.W.3d at 122–23, or if reliance upon the existence of the easement continued after the sale. *Whaley v. Cent. Church of Christ of Pearland*, No. 01-02-01354-CV, 2004 WL 1405701, at \*4 (Tex. App.—Houston [1st Dist.] June 24, 2004, no pet.) (mem. op.). The grant of an easement by estoppel "depend[s] on the unique facts of each case." *Holden v. Weidenfeller*, 929 S.W.2d 124, 131 (Tex. App.—San Antonio 1996, writ denied); *see Mack v. Landry*, 22 S.W.3d 524, 528 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *Drye*, 364 S.W.2d at 209.

## B.   Scarbroughs' evidence that an easement by estoppel was created

In support of their assertion that Easterling gave them permission to construct the drainage system, the Scarbroughs included in their summary-judgment evidence Easterling's affidavit. He averred as follows:

> I specifically gave permission for Ed Scarbrough . . . . to install any drainage pipes or drainage inlets on the Scarbrough property that would then cross over onto my property and discharge water into the ravine. In short, Ed Scarbrough had my full and explicit permission to construct all of the drainage improvements that he built on both his property and my property and he had my explicit permission that he could direct water into the ravine from his property or my property in whatever fashion he designed . . . .

## C.   The Kolbs' challenges to Easterlings' affidavit

The Kolbs contend that Easterling is an interested witness and, therefore, his affidavit cannot support summary judgment unless "(1) it is uncontroverted; (2) it is clear, positive, and direct; (3) it is otherwise credible and free from

16

contradictions and inconsistencies; and (4) it could have been readily controverted." *RRR Farms, Ltd. v. Am. Horse Prot. Ass'n, Inc.*, 957 S.W.2d 121, 132 (Tex. App.—Houston [14th Dist.] 1997, pet. denied), *modified on other grounds*, *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (setting forth requirements for affidavit from interested witness to support summary judgment). According to the Kolbs, the affidavit fails on all accounts.

## 1. Whether Easterlings' affidavit is free from contradictions

The Kolbs' first challenge is that Easterling's affidavit contradicts his earlier deposition testimony. Specifically, they contend that the following portion of his deposition demonstrates that he could not have given the "explicit permission" his affidavit discusses:

Q: Do you know whether the black pipe or the white pipe connected to Ed's property?

A: No. All I know is: The one that was right there where the pooling was—and that was the French drain, we'll call it, I guess—that's the only one I remember seeing.

. . . .

Q: You didn't see any that ran to his property?

A: I didn't notice any. I mean, all I saw was just the one that he had dug there. I didn't know if there were any other going there. The only one I remember seeing is just that one channel going from the drain over to the bulkhead.

17

According to the Kolbs, if Easterling did not realize that one of the pipes drained from the Scarbrough property, it is impossible that Easterling gave Scarbrough "explicit permission" to drain water onto his land.

While we agree that the affidavit deals more directly and in greater detail with Easterling's knowledge about the drainage pipes than his earlier deposition testimony, we do not agree that the two are inconsistent. Nothing in Easterling's deposition states that he did not authorize drainage from the Scarbroughs' property. In fact, it indicates the opposite. Easterling explained that, due to the slope of the terrain, rain runoff was flowing from higher lots, including the Scarbroughs' lot, onto his own. Ed Scarbrough's drainage project took the existing surface-level runoff, moved it underground, and released it into the naturally created ravine, in a manner that both the Scarbroughs and Easterlings described as an improvement to the previous, more erosive process.

In his deposition, Easterling acknowledged that he knew there were two pipes and only one of the two drained from his low spot. He knew the pipes were pulling rain water underground so that it would not cross the surface of his lot on its way to the ravine. That he could not describe in his deposition exactly where the pipes were positioned is not inconsistent with him giving Scarbrough express permission to lay pipes. He told Scarbrough that he had permission to do what he felt was necessary to address the surface-level runoff, bring it underground, and

minimize erosion. He left the details of the project to Scarbrough, but he expressly authorized the work.

We conclude that the affidavit and deposition testimony are not inconsistent and, therefore, overrule this challenge to the summary-judgment evidence.

Next, we address the Kolbs' contention that Easterling is an interested witness.

### 2. Whether Easterling is an interested witness

The Kolbs' original petition named the Scarbroughs and the Easterlings as defendants. David Easterling was deposed in September 2013. The Kolbs nonsuited their claims against the Easterlings one month later. The affidavit from Easterling that was attached to the Scarbroughs' summary-judgment motion was executed nine months after Easterling was nonsuited.

At the time he executed his affidavit, Easterling no longer had an interest in the outcome of the litigation. *See Nicholson v. Smith*, 986 S.W.2d 54, 59 (Tex. App.—San Antonio 1999, no pet.) (holding that deponent was not interested witness "because he did not have a stake in the litigation or a material interest in its outcome."); *see also Brooks v. Sherry Lane Nat'l Bank*, 788 S.W.2d 874, 877 (Tex. App.—Dallas 1990, no writ). He also no longer had an interest in the property underlying the claims. *Cf. Hayes v. E.T.S. Enter. Inc.*, 809 S.W.2d 652, 656 (Tex. App.—Amarillo 1991, writ denied) (stating that individual who has stake in other

19

litigation involving subject matter of lawsuit in question qualified as interested witness). Accordingly, Easterling does not qualify as an interested witness.

The Kolbs respond that Easterling should be considered an interested witness, nonetheless, because the Scarbroughs previously helped him get a job at AFLAC—where both of the Scarbroughs worked—which, the Kolbs allege, made Easterling "beholden" to the Scarbroughs.

The record contains deposition testimony from the Scarbroughs and David Easterling to the effect that they were friendly neighbors. According to Cheryl Scarbrough, Easterling was unemployed for a time and was having difficulty finding new employment. To assist him with his financial situation, she mentioned that AFLAC was looking for salespeople. In February 2010—before the drainage pipes were installed and three years before this litigation—Easterling took the Scarbroughs' advice and pursued a position at AFLAC. He stayed with the company until 2012. By the time the Kolbs sued him in 2013, he had left AFLAC and had been working at Home Depot for over a year.

The Kolbs cite no authority for the proposition that a friendly gesture to aid a neighbor looking for employment causes one neighbor to be "beholden" to the other such that he may be considered an "interested witness" in his neighbor's litigation. In our view, it does not.

Accordingly, we overrule this challenge to David Easterling's affidavit.

**D.      Whether the evidence established reliance**

The Kolbs' next challenge whether the summary-judgment evidence established the element of reliance to create an easement by estoppel. The Kolbs argue that Scarbrough could prove reliance only through evidence that he paid consideration to the Easterlings for the use of their land or that he incurred expenses creating the drainage system. They contend there is no evidence of either. We disagree.

The record contains evidence that Scarbrough relied on Easterling's consent to the use of his land for drainage. Ed Scarbrough testified that he approached the Easterlings about the possibility of adding a drainage system on their property and had several conversations with them before reaching an agreement. David Easterling specifically agreed to allow Scarbrough to build the concrete headwall and install underground pipes on his land, but his consent was conditioned on Scarbrough agreeing to pay for the project and do the work himself.

Scarbrough testified that he bought pipe as needed for specific projects. He stated that he did not buy the pipe he used for this project until after Easterling agreed to allow the drainage system. Further, Scarbrough, along with a paid helper, performed the manual labor to pour the concrete forms, dig the ditches, and lay the pipe.

For his part, Easterling averred that Scarbrough was a "good neighbor" who expended his own money "to buy the materials and to install the concrete headwall and drainage pipes" and "paid for the labor of a helper that aided him in the installation." Easterling stated his belief that "Scarbrough would not have spent the time and money to construct these drainage improvements if he did not have [Easterling's] explicit permission to enter my property to install" them. Easterling added that he "was pleased with the results."

Scarbrough presented evidence that he expended funds and performed manual labor in reliance on Easterling's representation. *See LaTaste Enter. v. City of Addison*, 115 S.W.3d 730, 736–37 (Tex. App.—Dallas 2003, pet. denied) (noting that reliance can be shown by expending funds to improve the dominant estate). We conclude that the Scarbroughs established that they relied on David Easterling's communication in constructing the drainage system on the Easterling/Kolb land. Evidence that Scarbrough paid consideration was not required.

**E.    Whether grant of use of land can be clear and specific enough to create an easement by estoppel as matter of law**

The Kolbs' final challenge concerns whether a landowner's permission can be specific and certain enough to support judgment as a matter of law on the creation of an easement by estoppel. The Kolbs suggest that the imposition of an easement by estoppel necessarily requires a trial and cannot be resolved by a

22

summary disposition. However, none of the cases cited by the Kolbs suggest that an easement by estoppel cannot be granted as a matter of law. Instead, to the extent those courts denied judgment as a matter of law, it was because, under the facts of each particular case, the opposing party successfully raised a fact issue. *See, e.g.*, *McClung v. Ayers*, 352 S.W.3d 723, 731 (Tex. App.—Texarkana 2011, no pet.) (holding that conflicting evidence prevented judgment as matter of law on easement by estoppel). It does not follow that every subsequent case must also contain a fact issue to prevent judgment as a matter of law.

We overrule this challenge to the trial court's order granting summary judgment.

Having reject each of the Kolbs' challenges, we overrule their first issue.

## Conclusion

We affirm the judgment of the trial court.


Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Brown and Lloyd.