

# IN THE
# TENTH COURT OF APPEALS

_____

### No. 10-18-00219-CV

**FORT WORTH & WESTERN RAILROAD CO.,**

                                                **Appellant**

 **v.**

**NATHAN D. ALBERT AND CHISHOLM TRAIL REDI-MIX, LLC,**

                                                    **Appellees**

_____

**From the 18th District Court**
**Johnson County, Texas**
**Trial Court No. DC-C201600307**

_____

## MEMORANDUM OPINION

_____

Fort Worth & Western Railroad Company appeals from a judgment that created

an easement across its property and denied its claims for trespass and injunctive relief. In

seven issues, FWWR complains that the evidence was legally and factually insufficient

for the jury to have found an easement by estoppel (Issue One), easement by necessity

(Issue Two), and prescriptive easement (Issue Three), that the trial court erred by denying

its claims for trespass and injunctive relief (Issue Four), that the trial court erred by

overruling its objections to the jury charge and entering the judgment because the evidence of the boundaries of the easement was legally and factually insufficient (Issue Five), that the trial court erred by overruling its objections to the jury charge and to the entry of the judgment because there was no description of the permitted uses of the easement (Issue Six), and that the trial court erred by awarding attorney's fees and costs to Albert rather than to FWWR (Issue Seven). Albert and Chisholm Trail Redi-Mix, LLC complain by cross-point that an exhibit was improperly admitted because it was not properly authenticated and constituted impermissible hearsay. We find that the judgment should be reversed and rendered in part as to the easement claims and reversed and remanded for a new trial as to the claims for trespass, injunctive relief, and attorney's fees.

GENERAL BACKGROUND FACTS

At issue is a railroad crossing across property owned by FWWR which connects a ten-acre tract of land purchased by Nathan Albert to State Highway 171 in Johnson County. The property was purchased by Albert individually in April of 2016 for the purpose of constructing and operating a cement mixing plant to be owned by Chisholm Trail Redi-Mix, LLC. Chisholm was formed for this purpose by Albert and two others, Simpson and Friermood.

The single-lane gravel crossing across FWWR's property was constructed in 1959 or 1960 pursuant to a license agreement for personal and agricultural use only. The agreement between FWWR's predecessor-in-title, Gulf, Colorado & Santa Fe Railway

Company, and Meek, the owner of the adjacent 22.95 acre tract from which the ten acre tract was later divided, gave Meek the right to construct and use the crossing for personal and agricultural purposes only. The license was not assignable by Meek without the written permission of the railroad.

The ten acres of the 22.95 acre tract were sold various times in the intervening years until its purchase by Albert. The crossing was used during that time frame for various purposes, including agricultural, commercial, and personal. A farmhouse and a small shop were the only improvements on the ten acre tract at the time of Albert's purchase. FWWR had objected to the commercial use of the crossing by sending letters to the owners in 2006, 2007, and 2009. Use of the crossing has continued as the only place to access the ten acres for a variety of purposes since that time.

After Albert purchased the property for the benefit of Chisholm, he and his partners in Chisholm constructed and began operating a concrete plant on the property, beginning operations in June of 2016. Their trucks used the crossing because it was the sole point of ingress and egress to the property. The plat for the property and the certificate of occupancy were not approved because Albert had been unable to provide proof of the right to use the crossing to the city of Cleburne.

FWWR sent Albert a letter in May of 2016 to inform him and Chisholm that they did not have the right to use the crossing to access the property. In late May of 2016, Albert and Chisholm filed a declaratory judgment action seeking the establishment of an easement by estoppel, easement by necessity, and a prescriptive easement. That same

day, FWWR filed counterclaims for trespass and damages as well as injunctive relief. A jury ultimately found in favor of Albert on each of the easement theories[1] and rejected FWWR's claims for trespass and injunctive relief against Albert and Chisholm. The trial court entered judgment pursuant to the jury's findings, awarded attorney's fees to Albert, and denied FWWR's claim for attorney's fees.

**LEGAL AND FACTUAL SUFFICIENCY STANDARD OF REVIEW**

Because the first three issues involve the sufficiency of the evidence to support the jury's findings, the following standard of review applies to all three issues. A party attacking the legal sufficiency of evidence supporting an adverse finding on an issue on which the party bore the burden of proof must demonstrate all vital facts in support of the issue were established as a matter of law. *Dow Chemical Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). The analysis requires that we first examine the record in the light most favorable to the verdict for some evidence supporting the finding, crediting evidence favoring the finding if a reasonable fact finder could and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 822 (Tex. 2005). Some evidence, meaning more than a scintilla, exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v Havner*, 953 S.W.2d 706, 711 (Tex. 1997). If, however, no evidence appears to support the finding, we then examine the entire

---

[1] Summary judgment had previously been granted in favor of FWWR and against Chisholm on the issue of easement by estoppel as to Chisholm.

record to determine whether the contrary proposition is established as a matter of law. *Francis*, 46 S.W.3d at 241. A proposition is established as a matter of law when a reasonable fact finder could draw only one conclusion from the evidence presented. *City of Keller*, 168 S.W.3d at 814-16. On a factual sufficiency review, the appellate court must consider and weigh all the evidence and will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

### EASEMENT BY ESTOPPEL

In its first issue, FWWR complains that the evidence was legally and factually insufficient for the jury to have found that an easement by estoppel should be imposed in favor of Albert. Generally, the grant of an easement must be made in writing and cannot be created by a parol agreement. *Pick v. Bartel*, 659 S.W.2d 636, 637 (Tex. 1983); *Stallman v. Newman*, 9 S.W.3d 243, 247 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). The equitable doctrine of easement by estoppel is an exception to the writing requirement. *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 209 (Tex. 1962); *Horner v. Heather*, 397 S.W.3d 321, 325 (Tex. App.—Tyler 2013, no pet.). "The owner of land, under some circumstances, may be estopped to deny the existence of an easement by making representations which have been acted upon by a purchaser to his detriment." *Drye*, 364 S.W.2d at 209—10 (noting that doctrine has been applied when party allows other party to expend money erecting drainage ditch across his land).

The Texas Supreme Court has established that there are three elements to an

easement by estoppel: (1) the owner of the servient estate (here, FWWR) communicated a representation, either by words or conduct, to the promisee (here, Albert); (2) the promisee believed the communication; and (3) the promisee relied on the communication. *See Harrison & Co. v. Boring,* 44 Tex. 255, 267-68 (1875), *Storms v. Tuck,* 579 S.W.2d 447, 452 (Tex. 1979); *Mitchell v. Garza*, 255 S.W.3d 118, 122 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

An easement by estoppel may be imposed against a subsequent purchaser for value if the subsequent purchaser had notice—actual or constructive—of the easement claimed, *Mitchell*, 255 S.W.3d at 122—23, or if reliance upon the existence of the easement continued after the sale. *Whaley v. Cent. Church of Christ of Pearland*, No. 01-02-01354-CV, 2004 Tex. App. LEXIS 5580, 2004 WL 1405701, at *4 (Tex. App.—Houston [1st Dist.] June 24, 2004, no pet.) (mem. op.). The grant of an easement by estoppel "depend[s] on the unique facts of each case." *Holden v. Weidenfeller*, 929 S.W.2d 124, 131 (Tex. App.—San Antonio 1996, writ denied); *see Mack v. Landry*, 22 S.W.3d 524, 528 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *Drye*, 364 S.W.2d at 209.

In February of 2016, an employee of FWWR met with Albert's business partners in Chisholm and discussed, among other things, Chisholm's plans to construct and operate a concrete plant on the property which would require the use of the crossing, as the crossing provided the only means for ingress and egress to the property. Albert was not part of this meeting. Albert's partners informed the employee that Albert would be deciding whether or not to purchase the property within the subsequent thirty days.

FWWR's employee provided Albert's partners with a sample crossing agreement, which contained requirements regarding insurance, improvements to the crossing to be made at Albert and Chisholm's expense, and also provided a list of vendors that had to be used to make the improvements. The employee and the owner of FWWR both testified that the sample agreement would not have been provided unless crossing was to be permitted and that Albert's partners were never specifically told that use of the crossing was not permitted. The sample agreement did not contain any information specific to the crossing at issue or Albert.

Additionally, prior to Albert's purchase of the property, the prior owner of the property applied for zoning changes with the City of Cleburne so that a concrete plant could be constructed on the property. Chisholm applied for an air quality permit to operate a concrete plant with the Texas Commission on Environmental Quality (TCEQ). FWWR filed objections to both and appeared in opposition based on concerns regarding the safety of the crossing. At those hearings, FWWR did not ever state that Albert or Chisholm did not have permission to use the crossing to access the property in those proceedings. Albert testified that if FWWR had told Albert or his business partners at any point during the process that the use of the crossing was not permitted that Albert would not have purchased the property or constructed the plant. Instead, FWWR attempted to prevent the permit by claiming that it would be dangerous to allow commercial vehicles to cross its tracks at the crossing due to the short distance to the highway.

Albert closed on the property in early April of 2016 and the concrete plant was

constructed by bringing prefabricated materials to the property via the crossing in question. Shortly after Albert closed on the property, FWWR's attorneys sent a letter to Albert and Chisholm in May of 2016 informing them that the use of the crossing was not permitted. The letter was sent after construction on the concrete plant was underway.

Ultimately, however, there was no evidence of a representation of any kind made by FWWR, the sole owner of the property, to Albert.[2] Rather, FWWR provided a sample agreement to Albert's partners which included the terms that would be required for Chisholm to be allowed to use the crossing. Albert and his partners ignored the requirements and proceeded with construction and operation of the plant using the crossing, even after Albert and Chisholm were denied a certificate of right to occupancy because Albert could not prove that there was a legal right to cross onto the property. The license agreement with Meek was expressly not assignable and did not constitute a basis for Albert and Chisholm to believe there was a right to use the crossing. We find that the evidence was legally and factually insufficient for the jury to have found each of the three elements to support the finding that an easement by estoppel had been created in favor of Albert. Because the evidence was legally and factually insufficient for the jury to have found that an easement by estoppel had been created due to FWWR's actions, we sustain issue one.

---

[2] Chisholm originally sought a finding that an easement by estoppel was created as to it; however, the trial court granted a motion for summary judgment denying their right to an easement by estoppel and that issue is not before us in this appeal.

## EASEMENT BY NECESSITY

In its second issue, FWWR complains that the evidence was legally and factually insufficient for the jury to have found that an easement by necessity existed. "Whether a property owner is entitled to an easement by necessity is a question of law, although underlying factual issues may need to be resolved in order to reach the legal question." *Staley Family P'ship, Ltd. v. Stiles*, 483 S.W.3d 545, 548 (Tex. 2016). "The party claiming a necessity easement must show: (1) unity of ownership of the alleged dominant and servient estates before severance; (2) the claimed easement is a present necessity and not a mere convenience; and (3) the necessity for the easement existed when the two estates were severed." *Stiles*, 483 S.W.3d at 548. An easement by necessity is also temporary and "ceases when the necessity terminates." *Bains v. Parker*, 143 Tex. 57, 182 S.W.2d 397, 399 (1944). The party seeking the easement by necessity carries the burden to establish all elements of that claim. *Staley Family Partnership, Ltd. v. Stiles*, 435 S.W.3d 851, 855-56 (Tex. App.—Dallas 2014), *aff'd*, 483 S.W.3d 545 (Tex. 2016). FWWR argues that the evidence was legally and factually insufficient for the jury to have found that the necessity existed at the time of the severance of the dominant and servient estate or that a continuing necessity to cross existed from the date of severance until the time of the trial.

Albert's property was part of a 702-acre tract which was severed in 1887 when 12.7 acres were conveyed in fee simple to the Gulf, Colorado, and Santa Fe Railway Company, a predecessor-in-interest of FWWR. The railroad's property ran through the larger tract, severing it into a northern section and a southern section. The ten acres at issue in this

proceeding are located in the northern section.

A traveler's map dated 1867 was admitted into evidence which showed the property and showed what Albert's expert referred to as a "military road" that ran between Fort Graham to Fort Belknap on the south side of the railroad's property. A second map dated from 1938 was admitted which showed the ten acres in relation to that road, which was in the general vicinity of what is currently State Highway 171. Albert's expert testified that a dotted line across the railroad's property from the northern part of the property in approximately the same location as where the crossing at issue is located presently indicated the existence of a private road or trail which crossed the railroad tracks.

Albert argues that the evidence was sufficient because the only way to access the northern part of the property was to cross the railroad's property to reach the road that would later become State Highway 171 in the 1930's. However, no party testified how any part of the property was used in 1887, if at all, by the original owner and if there was ever a necessity to cross from the north side to the south side across the railroad's property in 1887 when the property was originally severed. Specifically, there was no evidence of the existence of a necessity to cross the railroad's property at the location of the crossing in question in this proceeding in 1887. Because Albert has failed to meet the third element to establish an easement by necessity, we find that the evidence was legally insufficient for the jury to have found that an easement by necessity should be imposed on FWWR's property. We sustain issue two.

## EASEMENT BY PRESCRIPTION

In its third issue, FWWR complains that the evidence was legally and factually insufficient for the jury to have found that an easement by prescription should be imposed on FWWR's property. A prescriptive easement is shown by "the open, notorious, hostile, adverse, uninterrupted, exclusive and continuous use of the servient estate for a period of more than ten years, and the absence of any of these elements is fatal to the prescriptive claim." *Allen v. Allen*, 280 S.W.3d 366, 377 (Tex. App.—Amarillo 2008, pet. denied); *see also Brooks v. Jones*, 578 S.W.2d 669, 673 (Tex. 1979) ("To obtain a prescriptive easement one must use someone else's land in a manner that is open, notorious, continuous, exclusive, and adverse for the requisite period of time."). Additionally, "the owner of the subservient estate must have actual or constructive notice that there was an adverse and hostile claim against the property." *Allen*, 280 S.W.3d at 378. "Otherwise, the use (especially if joint) is presumed to be permissive, and a permissive use can never ripen into an easement by prescription." *Harrington v. Dawson-Conway Ranch, Ltd.*, 372 S.W.3d 711, 718 (Tex. App.—Eastland 2012, pet. denied). *See also Vrazel v. Skrabanek*, 725 S.W.2d 709, 711 (Tex. 1987) (finding use of property with owner's express or implied permission or license will never ripen into a prescriptive easement no matter how long the use continues). The party claiming the existence of the prescriptive easement has the burden of proof to establish each element by a preponderance of evidence. *Boerschig v. Southwestern Holdings, Inc.*, 322 S.W.3d 752, 764 (Tex. App.—El Paso 2010, no pet.) (*citing Tiller v. Lake Alexander Properties, Ltd.*, 96 S.W.3d 617, 624 (Tex. App.—Texarkana 2002, no

pet.)). *See Brooks*, 578 S.W.2d at 673. FWWR argues that the evidence was legally and factually insufficient for the jury to have found that Albert and his predecessors' use of the property was (1) exclusive, (2) adverse, (3) hostile, or (4) was continuous for more than ten years.

It is undisputed that Albert must rely on the conduct of his predecessors to establish the prescriptive easement since he had not owned the property prior to 2016. However, Albert argues that the following evidence and reasonable inferences establish the elements necessary for a prescriptive easement in that there was evidence that the crossing had been in existence since the 1940's and over that time had been used for different purposes including a rodeo, pipe company, and construction companies for over the last ten years prior to the litigation. In June of 2006, FWWR sent a letter to a business that stated that the crossing was impermissibly being used for commercial purposes and to cease and desist the use of the crossing for that purpose. In 2008, FWWR sent a letter to another business regarding the commercial use of the crossing and threatening legal action for trespassing if commercial crossing continued. In 2009, FWWR sent a letter to the Meeks advising them that commercial use of the crossing was forbidden by their agreement. The business that was operating on the property in 2007 and 2008 had gone out of business and was not operating on the property in 2009. There was no evidence that the Railroad had ever taken any other action to impede any use of the crossing by [Albert's] predecessors.

Simpson, a partner in Chisholm, testified that he had known that Meek and

another man named Johnson owned the adjacent property to Meek used the crossing for their businesses of raising livestock for rodeo purposes and that use had continued for more than ten years. Simpson was 49 years old at the time of the trial. Johnson had a license for his own railroad crossing next to Meek's, however, Simpson and Friermood both testified that Johnson used the crossing licensed to Meek. There was no evidence as to when the use of the crossing by Johnson took place other than during the same time as Meek. Albert argues that the use of the crossing by Meek and Johnson for transporting livestock for rodeo purposes constituted a commercial use of the property for well over ten years. Johnson's use of the crossing, whenever that took place, renders Meek's use of the crossing non-exclusive.

Additionally, Meek had a license which gave him permission to use the crossing for "agricultural purposes" which were not further defined. Raising livestock and transporting them is an agricultural purpose for which Meek had permission to use the crossing. Moreover, use of an easement by permission of the servient estate owner, either express or implied, no matter of what period of time, cannot subsequently ripen into a prescriptive right. *Wiegand v. Riojas*, 547 S.W.2d 287, 290 (Tex. Civ. App.—Austin 1977, no writ). However, the use of property which originally was permissive may become adverse at a later date, but the presumption is that there is a continuation of the permissive use. *Id*. In order to transform the permissive use into an adverse use, there must be a distinct and positive assertion of a right which is hostile to the owner's rights brought to the servient owner's attention. *Id.* Albert argues that Meek's use of the crossing

for what he contends were commercial purposes was hostile.

We do not find that the evidence was sufficient to show that the use of the crossing was exclusive to Albert and his predecessors, nor did Meek's use of the property rise to the level of non-permissive use until the letters sent by FWWR in 2007 and 2008 when it is undisputed that for a brief period the crossing was being used for commercial purposes from 2007-2009. Friermood testified that a commercial trucking company used the crossing but did not give dates of the use of the crossing. There was no evidence that the crossing was used for any specific commercial purposes from 2009 until 2016.

"[C]reation of an easement by prescription is not favored in the law." *Wiegand*, 547 S.W.2d at 289. Evidence of a prescriptive easement "must be clear and positive, and should be strictly construed." *Callan v. Walters*, 190 S.W. 829, 832 (Tex. Civ. App.—Austin 1916, no writ). Before courts will take the "severe step" of "taking real estate from a record owner without express consent or compensation . . . the law reasonably requires that the parties' intentions be very clear." *Tran v. Macha*, 213 S.W.3d 913, 915 (Tex. 2006) (per curiam). We do not find that the evidence was legally sufficient to establish that the use of the crossing was exclusive, hostile, or adverse for a period of at least ten years. Because Albert did not establish every element necessary to prove the establishment of an easement by prescription, we sustain issue three.

## INJUNCTIVE RELIEF AND TRESPASS

In its fourth issue, FWWR complains that the trial court erred in entering judgment that Albert and Chisholm were not trespassing and that FWWR was not entitled to

injunctive relief.

The Supreme Court of Texas "has consistently defined the tort of trespass as encompassing three elements: (1) entry (2) onto the property of another (3) without the property owner's consent or authorization." *Envntl. Processing Sys., L.C. v. FPL Farming Ltd.*, 457 S.W.3d 414, 419, 425 (Tex. 2015). The jury charge in this proceeding included these three elements, and the jury found that there was no trespass by Albert or Chisholm. FWWR argues that the evidence to support the jury's finding was factually insufficient. Albert and Chisholm did not address the trespass issue in their brief to this Court.

There is no dispute that Albert and Chisholm entered onto FWWR's property or that FWWR was the owner of the property. As the evidence related to the issue of the creation of an easement, Albert and Chisholm argued that FWWR failed to adequately inform them that there was no right to cross FWWR's property and therefore, FWWR should have been estopped to deny the existence of an easement. However, we have found that no easement under any theory argued by Albert and Chisholm existed.

Additionally, the evidence also established that Albert and Chisholm built a driveway that encroached on FWWR's property, which was not part of the crossing. There was no evidence that FWWR had consented to the use of its property for the construction of the driveway or that the easement extended beyond the railroad crossing itself. The jury was requested to determine whether Albert and/or Chisholm trespassed on FWWR's property but did not define the parameters of the property in such a way to limit it to the crossing. The jury answered, "No" to the question.

FWWR also argues that the jury's answer related to the driveway that was included in the judgment was against the great weight and preponderance of the evidence. We agree with FWWR that the evidence established that the driveway was built in part on FWWR's property and there was insufficient evidence to support the finding that the driveway did not constitute a trespass onto FWWR's property. Because of that, we find that the jury's answer was not supported by factually sufficient evidence.

When an appellate court sustains a challenge to the factual sufficiency of the evidence, it must reverse and remand for a new trial; it may not render judgment. *See Wright Way Spraying Serv. v. Butler*, 690 S.W.2d 897, 898 (Tex. 1985). We reverse and remand the claims regarding trespass to the trial court for a new trial.

Also in its fourth issue, FWWR contends that the trial court erred in entering judgment that FWWR was not entitled to injunctive relief to prevent Albert and/or Chisholm from using the railroad crossing. An injunction may be a proper remedy where a trespass invades the possession of a person's land or destroys the use and enjoyment of the land. *Savering v. City of Mansfield*, 505 S.W.3d 33, 49 (Tex. App.—Fort Worth 2016, pet. denied). However, we have found that the trespass claim must be reversed for a new trial. FWWR's claims for injunctive relief are dependent on a finding that a trespass has occurred by Albert and/or Chisholm. Albert and Chisholm argue that their continued use of the crossing has not been shown to result in imminent harm or irreparable injury to establish the right to injunctive relief, but this argument presumes that Albert and Chisholm had the right to cross, which we have determined that they did not. Therefore,

we find that the claims for injunctive relief should also be reversed and remanded for a new trial in accordance with this opinion. We sustain issue four.

## BOUNDARIES OF THE EASEMENT

In its fifth and sixth issues, FWWR complains that the trial court erred by overruling its objections to the jury charge and entering the judgment regarding the boundaries and permitted uses of the easement. However, because we have found that no easement existed, it is not necessary to reach these issues. *See* TEX. R. APP. P. 47.1.

## ATTORNEY'S FEES

In its seventh issue, FWWR complains that the trial court erred by awarding attorney's fees in favor of Albert and no attorney's fees to FWWR. The Declaratory Judgment Act permits an award of "reasonable and necessary" costs and attorney fees "as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. "Where the extent to which a party prevailed has changed on appeal, our practice has been to remand the issue of attorney fees to the trial court for reconsideration of what is equitable and just." *Farmers Grp., Inc. v. Geter*, 620 S.W.3d 702 (Tex. 2021) (*citing Morath v. Tex. Taxpayer & Student Fairness Coalition*, 490 S.W.3d 826, 885 (Tex. 2016).

In this appeal, Albert and Chisholm have not prevailed in any regard and have obtained no favorable results. Because of this, we find that the award of attorneys' fees should be reversed for the trial court's reconsideration. On remand, "the degree of success obtained" should, as always, be "the most critical factor in determining reasonableness of

a fee award." *Farmer's Grp., Inc.*, 620 S.W.3d at 713 (internal citations omitted). We sustain issue seven.

## CROSS-POINT OF ALBERT AND CHISHOLM—ADMISSION OF EVIDENCE

In its sole cross-point on appeal, Albert and Chisholm argue that the trial court erred by admitting the Meek crossing agreement into evidence because it constituted impermissible hearsay and was not properly authenticated. However, in the three sentences included in this issue in Albert and Chisholm's brief to this Court, Albert and Chisholm did not cite to any authority and made no argument other than to say that the document "was not properly authenticated[,] is pure hearsay, and was the record of a predecessor railroad with no known business record keeping processes." In order to properly present an issue to this Court, a party is required to include citations to authority in support of their arguments. *See* TEX. R. APP. P. 38.1(i). We find that this cross-point was inadequately briefed and was therefore waived. *See* TEX. R. APP. P. 38.1(i).

## CONCLUSION

Having found that the evidence was legally and factually insufficient for the jury to have found that an easement by estoppel, easement by necessity, or easement by prescription should be imposed against FWWR, we reverse the portion of the trial court's judgment as to the easement by estoppel, easement by necessity, and easement by prescription findings and render a declaration that there is no easement by estoppel, necessity, or prescription. Additionally, we reverse the judgment of the trial court denying FWWR's claims for trespass and injunctive relief and remand this proceeding

for a new trial on those claims. We reverse the portion of the trial court's judgment awarding attorney's fees to Albert and remand the issue of the attorney's fees to the trial court for its reconsideration.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Johnson, and
      Justice Smith
Judgment Reversed and Rendered in Part, Reversed and Remanded in Part
Opinion delivered and filed February 23, 2022
[CV06]

