Raymond B. **WHALEY** and Eleanor H. Whaley, Appellants,

v.

**CENTRAL CHURCH OF CHRIST OF PEARLAND, David L. Bean, and Glenn Mancill, Appellees.**

No. 01–05–00677–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 8, 2007.

Victor Allen Sturm, Law Office of victor A. Sturm, P.C., Pearland, for appellants.

Richard A. Stewart, Adams and Reese, LLP, Houston, for appellees.

Panel consists of Justices TAFT, ALCALA, and HANKS.

## OPINION

ELSA ALCALA, Justice.

Appellants, Raymond B. Whaley and Eleanor H. Whaley ("the Whaleys"), appeal the trial court's judgment granting them an easement of 40 square feet on a portion of land owned by appellee, Central Church of Christ of Pearland ("the Church") for a sign. This appeal stems from the trial court's judgment resulting from our remand of this case in an earlier appeal. *See Whaley v. Cent. Church of Christ of Pearland,* No. 01–02–01354–CV, 2004 WL 1405701 (Tex.App.-Houston [1st Dist.] June 24, 2004, no pet.) (mem. op.). In two issues, the Whaleys contend that (1) the evidence was legally and factually insufficient to support the trial court's judgment limiting the easement to 40 square feet and (2) the trial court's judgment granting the Whaley's a 40–square–foot easement "was arbitrary and capricious." We hold that the evidence is legally and factually sufficient to support the trial court's judgment and that the trial court did not act arbitrarily or capriciously. Accordingly, we affirm.

## Background

In 1976, the Whaleys purchased a landlocked tract from the Church's predecessor in title. An easement for a driveway was expressly granted so that the Whaleys could access the landlocked tract. In addition to the easement for the driveway, the earnest money contract between the Whaleys and the seller stated that the Whaleys would be allowed "to erect a sign at a designated location."

In 1977, the Whaleys opened an automotive repair shop on their tract and erected a sign on the seller's property. The sign was metal, two feet wide by three feet long, and mounted on a three-foot pole. The sign's location did not abut on either the Whaleys' land or the driveway ease-

ment. Eight years later, that sign was replaced by a sign 12 feet wide by eight feet high, which sat on the premises for 12 years until it was damaged in a storm. After the sign was damaged, it was replaced in 1997 by a sign that was metal, approximately eight feet long, and on top of a brick base that was two feet deep and eight feet wide. The sign and base together were approximately six feet in height.

In 2002, the Church purchased the tract burdened with the driveway and sign easements. The Church removed the Whaleys' sign because they did not have an easement that expressly allowed the sign. The Whaleys sued the Church for removing the sign, and a temporary injunction was issued to prohibit the Church from interfering with the Whaleys' easement. The Whaleys replaced the sign taken down by the Church with a sign that was similar in size to the 1997 sign. After a bench trial on the merits, the trial court rendered judgment in the Church's favor, but we reversed the trial court's decision in the subsequent appeal by the Whaleys. We held that "the Whaleys have a sign easement by estoppel at the location on which the sign is and has been erected" and remanded the cause "for the determination of a legal description of the sign easement and for entry of judgment."

After we issued our mandate, the Whaleys filed a motion in the trial court for entry of judgment. The Whaleys sought an easement that included a metes and bounds description of a 10–foot–by–10–foot area around the sign. Referring to our *opinion that granted the Whaleys an ease*ment "at the location on which the sign is and has been erected," the Church challenged the size of the easement requested by the Whaleys.

The trial court held a hearing on the issue. At the hearing Mr. Whaley and David L. Bean, a church elder, testified.

Mr. Whaley testified that when he rebuilt the sign after the Church removed it in 2002, he became familiar with the amount of space needed to rebuild or maintain the sign. He said that the minimum area required was ten feet by ten feet and that "I don't see how it could be less than that." Bean disputed the need for 100 square feet. Bean testified that the Whaleys had never communicated to him or to the Church the need for an easement 100 square feet in size and stated that "I don't know what it [the size of the easement] is based on." Bean thought that it "was just an assumption of dimension that [the Whaleys] wanted to take." The trial court's judgment granted an easement of a four-foot by 10–foot area (40 square feet) for the easement, describing it by metes and bounds.

## Dimensions of Easement

In two issues, the Whaleys assert that the evidence is legally and factually insufficient to support the trial court's judgment limiting the easement to 40 square feet, calling the court's decision arbitrary and capricious. The Whaleys contend that the Church presented no evidence to controvert the testimony that 100 square feet was necessary. The Whaleys assert that because they "conclusively established" the need for 100 square feet, the trial court's ruling allowing only a 40–square–foot area was against the "great preponderance" of the evidence. The Church contends that because this Court previously declared "the Whaleys have a sign easement by estoppel at the location on which the sign is and has been erected," the Whaleys' sign easement is limited to the exact surface area that it now occupies—that is, the location "on which the sign is ... erected."

### A. Standard of Review

Neither party requested post-judgment findings of fact and conclusions of law, and

the trial court filed none. Accordingly, the trial court's judgment implies all findings necessary to support it, provided the necessary findings are raised by the pleadings and supported by the evidence. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex.2002); *Wade v. Comm'n for Lawyer Discipline*, 961 S.W.2d 366, 374 (Tex.App.-Houston [1st Dist.] 1997, no writ). Because the record on appeal contains a full reporter's record of the trial, the Whaleys may challenge the trial court's implied findings for legal and factual sufficiency, under the same standards that govern challenges to a jury's findings. *See BMC*, 83 S.W.3d at 795. To prevail, however, the Whaleys must demonstrate that the trial court's judgment cannot be sustained by any theory raised by the evidence. *See Friedman v. New Westbury Vill. Assocs.*, 787 S.W.2d 154, 157–58 (Tex.App.-Houston [1st Dist.] 1990, no writ).

"The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005). "[L]egal-sufficiency review in the proper light must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* The evidence is legally sufficient if it "would enable reasonable and fair-minded people to differ in their conclusions." *See id.* at 822. As long as the evidence falls within the zone of reasonable disagreement, "[a] reviewing court cannot substitute its judgment for that of the trier-of-fact." *Id.* Although the reviewing court "must consider evidence in the light most favorable to the verdict, and indulge every reasonable inference that would support it[,] … if the evidence allows of only one inference, neither jurors nor the reviewing court may disregard it." *Id.*

In determining factual sufficiency, this Court weighs all the evidence, both supporting and conflicting, and may set the finding aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Comm'n of Contracts v. Arriba Ltd.*, 882 S.W.2d 576, 582 (Tex.App.-Houston [1st Dist.] 1994, no writ). In an appeal from a bench trial, we may not invade the fact-finding role of the trial court, which alone determines the credibility of the witnesses, the weight to give their testimony, and whether to accept or reject all or any part of that testimony. *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580–81 (Tex. App.-Houston [1st Dist.] 1997, pet denied).

## B. Law of Easements

 "Every easement carries with it the right to do whatever is reasonably necessary for full enjoyment of the rights granted." *Roberts v. Friendswood Dev. Co.*, 886 S.W.2d 363, 367 (Tex.App.-Houston [1st Dist.] 1994, writ denied). In determining the scope of an easement, "we may imply only those rights reasonably necessary to the fair enjoyment of the easement with as little burden as possible to the servient owner." *Lakeside Launches, Inc. v. Austin Yacht Club, Inc.*, 750 S.W.2d 868, 871 (Tex.App.-Austin 1988, writ denied) (citing *Coleman v. Forister*, 514 S.W.2d 899, 903 (Tex.1974)). "Nothing passes by implication as incidental to a grant of an easement except what is reasonably necessary to its fair enjoyment." *Kearney & Son v. Fancher*, 401 S.W.2d 897, 903 (Tex.Civ.App.-Fort Worth 1966, writ ref'd n.r.e.) (holding "the scope and limit of the easement granted" gave right "to use the railroad switch track and grounds" for loading and unloading railroad cars and not for ingress and egress by trucks).

■■■ Concerning their legal and factual sufficiency of the evidence challenge, the Whaleys contend that the 100–square–foot easement is necessary because, if the easement is smaller or limited to the exact size of the sign's base, they would commit a trespass if they moved onto the Church's property to repair or maintain the sign. An easement, by its very nature, includes—and is limited to—the rights granted and only such other rights as are "reasonably necessary" to fulfill the purpose of the easement and which burden the servient estate as little as possible. *See Roberts,* 886 S.W.2d at 367. Maintaining or repairing the sign is the type of right that is reasonably necessary to fulfill the purpose of the sign easement. *See id.* Thus, contrary to the Whaleys' arguments, even if the sign is limited to the exact size of its base, the right to access the sign for maintenance or repair is included within the easement. *See id.*

Considered in the light most favorable to the judgment, the evidence shows that the sign currently in place is eight feet long and sits on top of a brick base that is two feet deep and eight feet wide, which amounts to a 16–square–foot area. The largest sign on the property was 12 feet long, but the record is silent about its depth. Although the trial court did not grant the Whaleys their requested 100 square feet for the easement for the sign, the trial court gave them more than twice the area of square feet that the base of the sign currently occupies. The Whaleys' rights are limited to only those which are necessary to effectuate the purpose of the easement, which is the erection of a sign. *See Lakeside Launches, Inc.,* 750 S.W.2d at 871. We note that a four by 10 foot area extends approximately one foot all the way around the base of the sign. We conclude that reasonable and fair minded people could determine that the 40–square–foot area was the proper size of the easement. We hold that the evidence is legally sufficient to support the trial court's judgment.

Turning to the factual sufficiency of the evidence, we weigh all the evidence in the record. Although Mr. Whaley testified that he needed 100 square feet, the trial court, as the finder of fact, was allowed to determine the weight to give his testimony. *See Nordstrom,* 965 S.W.2d at 580–81. The court determined the easement extended approximately one foot all the way around the base of the sign. We cannot conclude that the trial court's judgment is arbitrary or capricious merely because the trial court opted not to give the Whaleys exactly what they requested and instead determined the scope of the easement based on the existing sign and the purpose of the easement. On this record, we cannot say that the trial court's finding of a 40–square–foot easement is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust." *Cain,* 709 S.W.2d at 176; *accord Comm'n of Contracts,* 882 S.W.2d at 582. Accordingly, we conclude that the evidence is factually sufficient to support the trial court's judgment.

We overrule the Whaleys' first and second issues.

## Conclusion

We affirm the judgment of the trial court.