ACCEPTED
03-15-00088-CV
5434027
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/27/2015 1:43:19 PM
JEFFREY D. KYLE
CLERK

# No. 03-15-00088-CV

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

5/27/2015 1:43:19 PM

JEFFREY D. KYLE
Clerk

IN THE COURT OF APPEALS
FOR THE THIRD DISTRICT OF TEXAS
AUSTIN, TEXAS

**GRAYCO TOWN LAKE INVESTMENT 2007 LP,**

Appellant,

v.

**COINMACH CORPORATION**,

Appellee.

Appealed from the County Court at Law No. 1
of Travis County, Texas

## BRIEF OF APPELLEE

LAW OFFICES OF
R. KEMP KASLING, P.C.
R. Kemp Kasling
State Bar No. 11104800
301 Congress Ave., Suite 300
Austin, Texas 78701
Telephone:  (512) 472-6800
Facsimile:  (512) 472-6823
Email:  kkasling@khdalaw.com

CARDWELL, HART & BENNETT, L.L.P.
J. Bruce Bennett
State Bar No. 02145500
807 Brazos, Suite 1001
Austin, Texas  78701
Telephone: 512-322-0011
Facsimile: 512-322-0808
E-mail:  jbb.chblaw@sbcglobal.net

ATTORNEYS FOR APPELLEE
**ORAL ARGUMENT *NOT* REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

<u>Appellant</u>                    ***Grayco Town Lake Investment 2007, LP ("Grayco")***

Represented by:             Frederick T. Johnson
                            Cody W. Stafford
                            Akilah F. Craig
                            DOBROWSKI, LARKIN & JOHNSON, LLP
                            4601 Washington Ave., Suite 300
                            Houston, Texas 77007
                            (Trial and Appellate Counsel)


Appellee:                   ***Coinmach Corporation ("Coinmach")***

Represented by:             R. Kemp Kasling
                            LAW OFFICES OF R. KEMP KASLING, P.C.
                            301 Congress Ave., Suite 300
                            Austin, Texas 78701
                            (Trial and Appellate Counsel)

                            J. Bruce Bennett
                            CARDWELL, HART & BENNETT, LLP
                            807 Brazos, Suite 1001
                            Austin, Texas 78701
                            (Appellate Counsel)

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................................................ ii

TABLE OF CONTENTS .................................................................................. iii

INDEX OF AUTHORITIES ............................................................................. v

STATEMENT OF THE CASE ......................................................................... vii

ISSUES PRESENTED ............................................................................. vii, viii

1. Does legally and factually sufficient evidence support the trial court's finding that Grayco was not a bona fide purchase of the leased premises and was therefore bound by the lease with Coinmach? (In response to Appellant's Issue 1)

2. Does legally and factually sufficient evidence support the trial court's finding that Grayco materially breached its obligations under the lease with Coinmach? (In response to Appellant's Issue 2).

3. Does legally and factually sufficient evidence support the trial court's finding that Coinmach suffered damages resulting from Grayco's breach of the lease with Coinmach? (In response to Appellant's Issue 3).

4. Does legally and factually sufficient evidence support the trial court's damages award to Coinmach? (In response to Appellant's Issue 4).

STATEMENT REGARDING ORAL ARGUMENT ........................................... viii

STATEMENT OF FACTS………………………………………………………...1

    I.       Preliminary statement…………………………………………...…1

    II.     The 1992 lease between De Narde and McNair ………………….1

III.    The 2002 lease between Bridge and Coinmach………………….……2

IV.    The supplement to the 2002 lease ……….……………………….....3

V.    The memorandum of the 2002 lease ………………………………5

VI.    Grayco acquires the lease premises……………………………..6

VII.    Grayco demolishes the lease premises…………………………….7

VIII.    The lawsuit and the final judgment……………………..………9

SUMMARY OF THE ARGUMENT .................................................. 11

BRIEF OF ARGUMENT ................................................................ 12

STANDARD OF REVIEW .............................................................. 12

ARGUMENT AND AUTHORITIES UNDER ISSUES 1 AND 2 ........................ 13

I.    Grayco failed to prove that it was a bona fide purchaser without notice of the 2002 lease ..………………………………………………………13

II.    Grayco was on notice of the 2002 lease because of Coinmach's possession of the laundry rooms..…………………………………17

III.    Legally and factually sufficient evidence shows that Grayco breached the 2002 lease by wrongfully terminating it before its expiration………….19

ARGUMENT AND AUTHORITIES UNDER ISSUE 3 AND 4 .......................... 23

CONCLUSION AND PRAYER ......................................................... 27

CERTIFICATE OF COMPLIANCE .................................................... 28

CERTIFICATE OF SERVICE ......................................................... 29

# INDEX OF AUTHORITIES

## CASES

*Alonso v. Alvarez,* 409 S.W.3d 754
(Tex. App. – San Antonio 2013, pet. denied) ......................................................... .12

*Birkenfeld v. Metro General Management, Inc.*, 2008 WL 696174
(Tex. App. – Amarillo 2008, no pet.) ...................................................................... 21

*Beutell v. United Coin Meter Co.*, 462 S.W.2d 334
(Tex. Civ. App.—Waco 1970, writ ref'd n.r.e.) ..................................................... 17

*Case Corp. v. Hi-Class Business Sys. of Am., Inc.,* 184 S.W.3d 760
(Tex. App. – Dallas 2005, no pet.)..……………………………………………….22

*City of Keller v. Wilson,* 168 S.W.3d 802 (Tex. 2005) ......................................... 12

*Coleman v. Rotana, Inc.,* 778 S.W.2d 867
(Tex. App. – Dallas 1989, writ denied) .................................................................. 21

*Daftary v. Prestonwood Market Square,* 404 S.W.3d 807
(Tex. App. – Dallas 2013, pet. denied) ................................................................... 21

*Doss v. Blackstock,* 466 S.W.2d 59
(Tex. Civ. App. – Austin 1971, writ ref'd n.r.e.) .................................................... 13

*Herbert v. Herbert,* 754 S.W.2d 141 (Tex. 1988) .................................................. 12

*Kerrville HRH, Inc. v. City of Kerrville,* 803 S.W.2d 377
(Tex. App. – San Antonio 1990, writ denied) .................................................. 21, 26

*Madison v. Gordon,* 39 S.W.3d 604 (Tex. 2002) ................................................... 13

*Rego Co. v. Brannon,* 682 S.W.2d 677
(Tex. App. – Houston [1st Dist.] 1984, writ ref'd n.r.e.)......................................... 12

*Silberstein v. Laibovitz,* 200 S.W.2d 647
(Tex. Civ. App. –Austin 1947, no writ)............................................................. 20, 22

*Sonnier v. Sonnier,* 331 S.W.3d 211 (Tex. App. – Beaumont 2011, no pet.).…….10

*Waggoner v. Morrow*, 932 S.W.2d 627
(Tex. App. – Houston [14th Dist.] 1996, no pet.).................................................... 14

*Westland Oil Development Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903
(Tex. 1982) ......................................................................................................... 13

*Whaley v. Cent. Church of Christ of Pearland,* 227 S.W.3d 228
(Tex. App. – Houston [1st Dist.] 2007, no pet.) ...................................................... 12

**RULES**

Tex. R. App. P. 9.4 ..............................................................................................28

Tex. R. App. P. 38.1(g)......................................................................................... 1

Tex. R. Civ. P. 297 .............................................................................................. 10

## STATEMENT OF THE CASE

This appeal concerns whether the trial court correctly held Grayco liable to Coinmach for breaching a 10-year laundry room lease with Coinmach covering the laundry rooms at an apartment complex that Grayco bought from the original lessor during the fifth year of the lease term. Following a bench trial, the trial court rendered judgment awarding Coinmach damages and attorney's fees against Grayco. (C.R. 484). The trial court made no findings of fact or conclusions of law.

## ISSUES PRESENTED

### Issue No. 1

Does legally and factually sufficient evidence support the trial court's finding that Grayco was not a bona fide purchase of the leased premises and was therefore bound by the lease with Coinmach? (In response to Appellant's Issue 1)

### Issue No. 2

Does legally and factually sufficient evidence support the trial court's finding that Grayco materially breached its obligations under the lease with Coinmach? (In response to Appellant's Issue 2).

### Issue No. 3

Does legally and factually sufficient evidence support the trial court's finding that Coinmach suffered damages resulting from Grayco's breach of the lease with Coinmach? (In response to Appellant's Issue 3).

<u>Issue No. 4</u>

Does legally and factually sufficient evidence support the trial court's damages award to Coinmach?  (In response to Appellant's Issue 4).

## STATEMENT REGARDING ORAL ARGUMENT

Coinmach does not believe that oral argument is necessary.  The material facts and legal issues are clear and sufficiently presented.  If, however, the Court decides to hear oral argument, then Coinmach requests the opportunity to participate.

# STATEMENT OF FACTS

## I. Preliminary statement.

Grayco's statement of facts is inconsistent with the standards of review applicable to this appeal, incomplete, and violates Tex. R. App. P. 38.1(g).[1] As such, Grayco's factual statement is unreliable and should be disregarded. The following factual statement complies with Tex. R. App. P. 38.1(g) and is consistent with the applicable standards of review.

## II. The 1992 lease between De Narde and McNair.

On March 11, 1992, De Narde Construction Company ("De Narde"), as lessor, entered into a lease agreement ("the 1992 lease") with McNair's Coin Laundry Company ("McNair"), as lessee, in which McNair leased "all present and future laundry room areas" at what was then known as "the Windjammer Apartments," a multi-family apartment complex located at 1201 Town Creek in Austin, Texas. (D. Ex. 1 [GP 000096]).

As rent, McNair agreed to pay De Narde fifty percent (50%) "of the gross receipts" that McNair collected from the coin-operated washers and dryers that

---

[1] For example, Grayco repeatedly asserts that it was unaware of the 2002 lease with Coinmach covering the leased premises that Grayco purchased. (Brief of Appellant at 1, 3, 6). Such argumentative assertions have no place in a statement of facts. As shown herein, they are incorrect as well.

McNair installed on the premises.  *Id.*

The 1992 lease was for a term of ten years and provided that it would automatically renew for an additional ten-year period, unless notice of cancellation was given 90 days before the lease expired.  (D. Ex. 2 [GP 000097]).  The lease also provided that it "shall automatically transfer to and be binding upon, any individual, firm or corporation purchasing or acquiring title to the real property" and would be "binding upon the transferees, heirs, and assignees of the parties." (D. Ex. 1 [GP 000097]).

## III.    The 2002 lease between Bridge and Coinmach.

Sometime before February 2002, Coinmach succeeded to McNair's interest as lessee under the 1992 lease, and Bridge Management Company ("Bridge") became the authorized agent for the owner of the leased premises.  (RR 34; D. Ex. 2 [GP 000005]).

On March 4, 2002, Bridge, "acting with full authority as the owner's agent," and Coinmach entered into a new 10-year lease (the "2002 lease') covering the laundry room areas at the Windjammer Apartments, which were now known as the "Regatta Apartments."  (RR 17, 34; D. Ex. 2 [GP 000004]).[2]  The 2002 lease

---

[2]  The 2002 lease is dated January 30, 2002, but was signed by Bridge on February 20, 2002, and by Coinmach on March 4, 2002.  (D. Ex. 2 [GP 000005]).

provided that it was "an extension, renewal, and modification of" the 1992 lease. (D. Ex. 2, ¶ 14 [GP 000005]).

One significant modification that the 2002 lease made to the 1992 lease concerned the rent payable to the lessor. The 2002 lease provided that Coinmach would "receive as minimum compensation $45.00 per machine, per month." (D. Ex. 2, ¶ 2 [GP 000004]). In other words, unlike the 1992 lease, Coinmach would keep the first $45.00 of monthly gross receipts generated by each coin-operated machine and would pay Bridge fifty percent (50%) of the monthly gross receipts over $45.00 from each machine. (RR 19, 24, 25).

The 2002 lease also provided that Coinmach would have "exclusive and quiet use, possession and enjoyment" of the leased premises during the lease term, which ended on March 4, 2012, and that the lessor would "clean and maintain the premises" and all facilities required to properly operate the washing machines. (RR 16-17; D. Ex. 2, ¶¶ 3, 6 [GP 000004]). The 2002 lease gave Coinmach the right to terminate the lease on written notice to the lessor if "vandalism, theft, or attempted theft at the premises" became "so excessive as to seriously affect [Coinmach's] ability to perform under the Lease." (D. Ex. 2, ¶ 9 [GP 000005]). The lessor had no right to terminate the lease before its expiration.

## IV.    The supplement to the 2002 lease.

Contemporaneously with the execution of the 2002 lease, Bridge and Coinmach also entered into a "Supplemental Agreement" covering "all coin operated laundry space" at the Regatta Apartments.  (D. Ex. 2 [GP 000006]).[3] Pursuant to the terms of this Agreement, Coinmach paid Bridge $14,000.00 as a "Lease Bonus/Decoration Allowance." (RR 18; D. Ex. 3). However, the Agreement provided that the lessor would refund the "unearned" prorated share of the lease bonus/decoration allowance "if LESSEE, for any reason should be required to remove its laundry equipment from these premises prior to the expiration of the original term of the Lease." (D. Ex. 2 [GP 000006]).

Coinmach and Bridge agreed that the monthly value was "$116.67 for pro-ration determination" purposes. (*Id.*).  The Supplemental Agreement also provided that the pro-ration determination "formula" related "only to calculating pro rata return of the lease bonus/decoration allowance paid to LESSOR by LESSEE" and that "[n]othing stated herein affects in any way LESSEE'S right to receive compensation for lost income in the event of LESSOR'S breach of the lease

---

[3] Like the 2002 lease it supplements, the Supplemental Agreement is dated January 30, 2002, but was signed by Bridge on February 20, 2002, and by Coinmach on March 4, 2002.  (D. Ex. 2 [GP 000005]).

agreement." (*Id.*).

**V. The memorandum of the 2002 lease.**

On March 25, 2003, Coinmach filed a "Memorandum of Lease," dated April 22, 2002 and executed on March 13, 2003, with the Travis County Clerk. (D. Ex. 4). The Memorandum advised that "**BRIDGE MANAGEMENT CO.**," as "**LESSOR** of the premises commonly known as **REGATTA APTS**, located at **1201 TOWN CREEK DR., AUSTIN, TX. 78741**" and "**COINMACH CORPORATON**, as Lessee did execute a written Lease Agreement" giving Coinmach "the right to occupy the real estate on which all laundry rooms are or will be situated on the land and premises named above under the terms and conditions of said lease." (*Id.*).[4] The Memorandum also advised that "[c]opies of said Lease (which is incorporated herein by reference) are on file at the respective offices of Lessor and Lessee." (*Id.*).[5]

The Memorandum was duly recorded in the official public records of Travis County. (*Id.*). The full text of the 2002 lease was not recorded. (RR 24). Coinmach filed the Memorandum so that any new owner of the Regatta Apartments would know of the existence of the 2002 lease. (RR 18-19).

---

[4] The capitalization and bolded language is in the original Memorandum of Lease.

[5] The Memorandum provided Coinmach's office address in Austin, Texas.

5

## VI.    Grayco acquires the lease premises.

On December 6, 2006, the owner of the Regatta Apartments entered into a real estate contract with Grayco's agent, Grayco Partners LLC ("Grayco Partners"), to buy the Apartments for $6.9 million.  (D. Ex. 5, ¶¶ 2.a, 3 [GP 000364]).[6]  The seller agreed to convey its interests in "all leases."  (D. Ex. 5, ¶ 2.b.iii [GP 000364]). The seller also agreed to deliver "[c]opies of all current leases pertaining to the Property, including any modifications, supplements, or amendments to the leases."  (D. Ex. 5, ¶ 7.d.2 [GP 000367]).  The real estate contract obligated the seller to "not enter into any new leases or renew any leases with terms of more than 6 months." (D. Ex. 5, ¶ 7.e [GP 000368]).

On April 17, 2007, while the real estate contract was still pending, a Grayco representative, Savanna Sharpe-Bogardus, sent an email to Coinmach concerning the laundry rooms at the Regatta Apartments.  (D. Ex. 9). Among other things, Bogardus informed Coinmach that "we" – the Grayco entities – were taking over the Regatta Apartments (and another nearby apartment complex, the Shoreline) and that "[w]e plan to keep as full as possible for 12 months, then empty them out

---

[6]  John Britton signed the real estate contract on behalf of Grayco Partners. (D. Ex. 5 [GP 000376).  Britton is an officer of Grayco as well as of Grayco Partners and various other Grayco entities. (RR 80).  Britton testified at trial that "we put the Regatta Apartments under contract in late 2006." (RR 81). Britton explained that Grayco Partners functions as "the operational development company," which obtains contracts to buy properties for Grayco, and then assigns the contracts to Grayco before closing.  (RR 82-83).

for demolition." (*Id.*).

On April 26, 2007, Grayco Partners assigned all of its right, title, and interest in the real estate contract to Grayco. (D. Ex. 10 [000411]). Grayco assumed all of Grayco Partners' obligations under the real estate contract. (*Id.*).[7]

On May 8, 2007, the real estate contract closed, and the seller conveyed the Regatta Apartments to Grayco by general warranty deed. (D. Ex. 11 [GP 000423]). Excepted from the warranty and conveyance were the 1992 lease and the 2002 lease "as evidenced by the Memorandum of Lease dated March 18, 2003, recorded under Document No. 2003065071 of the Official Public Records of Travis County, Texas." (*Id.*). (D. Ex. 11 [GP 000426]). Grayco admitted finding the Memorandum before closing and that the Memorandum referred to Coinmach. (RR 82, 85).[8]

## VII. Grayco demolishes the lease premises.

Sometime after Grayco acquired the Regatta Apartments, Coinmach complained to Grayco's managing agent, Greystar, that Coinmach's laundry

---

[7] Britton executed the assignment on behalf of both Grayco Partners and Grayco. (D. Ex. 10 [000412]).

[8] Grayco's position at trial was that it assumed the Memorandum was simply a renewal of the 1992 lease and that the prior owner breached the real estate contract by failing to provide a copy of the 2002 lease and Supplemental Agreement to Grayco before closing. (RR 84, 86). However, Grayco has not sued the prior owner. (RR 97).

machines at the Apartments had been "horribly vandalized" and about the "horrible" state of the laundry rooms there. (RR 89, 90; D. Ex. 14). Coinmach had only recently reworked all of the laundry machines. (*Id.*). Coinmach asked that locking doors be installed on the laundry rooms. (*Id.*). Once that was completed, Coinmach said it would put in better equipment and redecorate the rooms. (*Id.*).[9]

However, Grayco never renovated the laundry rooms, and in November 2007, Greystar, writing on Grayco's behalf, advised Coinmach that "effective October 31, 2007, Regatta Apartments cancels its service with your company," and that the Apartments were closed and would be demolished. (Bogardus Dep. at 47; D. Ex. 15). Greystar acknowledged that this action constituted an early termination of the lease, and that "lost revenue" and a "termination fee" "may be assessed as a result of this action." (*Id.*). "[W]hen closing Regatta's account," Greystar asked Coinmach to take into consideration that there had been "no residual laundry income on the community since we became the managing agent for Regatta in May '07" as a result of crime and vandalism. (*Id.*). The demolition of the Regatta Apartments together with the laundry rooms began shortly thereafter. (D. Ex. 16).

Coinmach demanded that Grayco pay the pro-rated amount due on the lease

---

[9] Although Coinmach had the right to terminate the 2002 lease because of the vandalism, it never did so, but asked Grayco to take steps to correct the problem. Under the lease, it was Grayco's obligation to maintain the laundry rooms.

bonus/decoration allowance in accordance with the terms of the Supplemental Agreement as well as pay it lost revenue caused by Grayco's early termination of the 2002 lease. (D. Ex. 17, 21, 24).[10] In September 2008, Coinmach filed this suit after Grayco refused to pay any amounts due under the 2002 lease. (CR 8).

## VIII. The lawsuit and the final judgment.

Coinmach sued Grayco for actual damages for breaching the 2002 lease and the Supplemental Agreement. (CR 214, 410). Grayco's principal defense was that it was a bona fide purchaser of the Regatta Apartments for value with no actual or constructive notice of the 2002 lease or the Supplemental Agreement. (CR 439).

On August 20, 2014, the trial court held a one-day bench trial. (CR 484). Coinmach produced oral and documentary evidence showing that Grayco failed to clean, maintain, and protect the laundry rooms, and that because of Grayco's early termination of the 2002 lease and its demolition of the laundry rooms along with the rest of the Regatta Apartments, Grayco had deprived Coinmach of the exclusive use, possession, and enjoyment of the laundry rooms for the remaining term of the lease. (RR 17, 33, 99; D. Ex. 14). Documentary evidence also showed that Grayco had actual and constructive notice of the 2002 lease and the

---

[10] Coinmach did not seek to recover any damages from Grayco for the destruction of the laundry machines when the Regatta Apartments were demolished. (RRs 20). Because of the poor condition of the machines, Coinmach decided to leave them at the Apartments. (RR 19-20, 29).

Supplemental Agreement when it acquired the Regatta Apartments. (P. Ex. 3; D. Ex. 9, 11).

After considering the evidence and the parties' post-trial briefing, the trial court, on November 6, 2014, rendered judgment for Coinmach and awarded Coinmach the sum of $67,122.19 in actual damages, $19,675.31 in prejudgment interest, and attorney's fees. (CR 484). The trial court based its actual damages award on the testimony of Coinmach's damages expert, John Kemmerer, who testified that Grayco was liable to Coinmach for $5,950.17, the prorated amount due under the terms of the Supplemental Agreement, and for $61,172.02, the net profits Coinmach lost under the 2002 lease because of Grayco's breach and early termination of the lease. (RR 42, 44, 45, 51; P. Ex. 7).[11] The trial court made no findings of fact and conclusions of law.[12]

---

[11] As the basis for calculating lost profits from the date of lease termination to the end of the lease term, Kemmerer used a daily rate derived from revenue generated by the laundry machines and the costs of operating those machines at the Regatta Apartments from December 2004 though early March 2006, which was a period of normal operation at the Apartments. (RR 57, 62, 64). Kemmerer stopped using revenue and cost data after March 2006 because the owner of the Apartments was preparing to sell the property to Grayco, which indicated that it wanted to terminate the 2002 lease and change the use of the property. (RR 43, 53, 54, 55, 58, 62, 69; P Ex. 7 ¶ 5). Also, under the real estate contract entered into in December 2006 with Grayco's agent, Grayco Partners, the owner of the Apartments was required not to enter into any residential leases (new or renewed) with terms of more than six months. (D. Ex. 5 [GP 000368).

[12] Grayco made a timely request for findings of fact and conclusions of law (CR 487), but when the trial court failed to file any, Grayco did not file a notice of past due findings of fact and conclusions of law as required by Tex. R. Civ. P. 297. "[T]he failure to file the required 'past

## SUMMARY OF THE ARGUMENT

The trial court's judgment should be affirmed. Grayco bought the Regatta Apartments with actual and constructive notice of the 2002 lease and the Supplemental Agreement to that lease. Grayco admits that it saw the recorded Memorandum of the 2002 lease before it closed on the property. The seller's deed to the Regatta Apartments listed the Memorandum of the 2002 lease separately from the 1992 lease. Copies of the 2002 lease and Supplemental Agreement were available to Grayco, but Grayco never asked to see them. Based on this evidence, the trial court correctly found that Grayco failed to prove its affirmative defense of bona fide purchaser for value without notice, and that Grayco was therefore bound by the terms of the 2002 lease and Supplemental Agreement.

Legally and factually sufficient evidence also support the trial court's findings that Grayco breached the 2002 lease and Supplemental Agreement. Grayco violated the lease covenants to keep the laundry rooms clean and maintained, and also violated the covenant of quiet use, possession, and enjoyment. Grayco's violation of those covenants, its unauthorized termination of the lease before its expiration, its demolition of the lease premises, and its refusal to comply

---

due' notice is treated as a waiver of the right to complain of the trial court's failure to file findings." *Sonnier v. Sonnier,* 331 S.W.3d 211, 214 (Tex. App. – Beaumont 2011, no pet.).

with the reimbursement provision of the Supplemental Agreement rendered Grayco liable to Coinmach for the damages awarded by the trial court. Legally and factually sufficient evidence supports those awards.

## BRIEF OF ARGUMENT

### *Standard of Review.*

As the trier of fact, the trial court was the sole judge of the credibility of the witnesses and the weight given their testimony. In resolving factual disputes, the trial court can accept or reject all or any part of a witness's testimony and may believe one witness and disbelieve others. *Alonso v. Alvarez,* 409 S.W.3d 754, 757 (Tex. App. – San Antonio 2013, pet. denied). This Court may not substitute its opinion for that of the trial court, even if this Court may have reached a different conclusion. *Herbert v. Herbert,* 754 S.W.2d 141, 144 (Tex. 1988); *Rego Co. v. Brannon,* 682 S.W.2d 677, 680 (Tex. App. – Houston [1st Dist.] 1984, writ ref'd n.r.e.).

Also, when, as here, the trial court enters no findings of fact and conclusions of law, the trial court's judgment implies all necessary findings supported by the pleadings and the evidence. *Whaley v. Cent. Church of Christ of Pearland,* 227 S.W.3d 228, 230-231 (Tex. App. – Houston [1st Dist.] 2007, no pet.). In reviewing those findings, this Court must indulge every reasonable inference that supports

12

them.  *City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex. 2005).  Consequently,

the trial court's judgment should be affirmed on any reasonable theory supported

by the evidence.  *Doss v. Blackstock,* 466 S.W.2d 59, 61 (Tex. Civ. App. − Austin

1971, writ ref'd n.r.e.).

## *Arguments and Authorities.*

### Issue No. 1 (Restated)

Does legally and factually sufficient evidence support the trial court's finding that Grayco was not a bona fide purchase of the leased premises and was therefore bound by the lease with Coinmach?  (In response to Appellant's Issue 1).[13]

### Issue No. 2 (Restated)

Does legally and factually sufficient evidence support the trial court's finding that Grayco materially breached its obligations under the lease with Coinmach?  (In response to Appellant's Issue 2).

## Argument and Authorities Under Issues 1 and 2

**I.** *Grayco failed to prove that it was a bona fide purchaser without notice of the 2002 lease.*

Real property purchasers are bound by every recital, reference and

---

[13] Grayco pleaded bona fide purchaser status as an affirmative defense. (CR 438-439). *See Madison v. Gordon,* 39 S.W.3d 604, 605 (Tex. 2002).  Grayco had the burden of proving that defense, but failed to carry it. For Grayco to prevail on appeal, it must show either that the evidence conclusively established the bona fide purchaser defense as a matter of law, or that the trial court's implied findings against Grayco on the essential elements of the defense are contrary to the overwhelming weight of the evidence, thus requiring a new trial.  Grayco has not made either showing.

13

reservation contained or fairly disclosed by any instrument that forms an essential link in the chain of title under which they claim. *Westland Oil Development Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 908 (Tex. 1982). The rationale for this rule is that "any description, recital of fact, or reference to other documents puts the purchaser on inquiry, and he is bound to follow up his inquiry, step by step, from one discovery to another and from one instrument to another, until the whole series of title deeds is exhausted and a complete knowledge of all matters referred to and affect the estate are obtained". *Id.*

In *Waggoner v. Morrow*, 932 S.W.2d 627 (Tex. App.—Houston [14th Dist.] 1996, no pet.), the appellate court reversed the trial court's ruling that the purchaser was a bona find purchaser for value. The facts showed that the deed in question referred to a "Partition of Lots 6, 7 and 8," but the partition itself was not filed of record. The partition showed a road easement on the property. Although the partition was not recorded in the deed records, the appellate court held that the purchaser was on notice of the partition *and* all the information contained in it. *Id.* at 632. This was because the recorded deed referenced the unrecorded partition and put the purchaser on notice of all information in the partition.

Here, legally and factually sufficient evidence overwhelmingly, if not conclusively, shows that Grayco had actual and constructive notice of the 2002

14

lease and the Supplemental Agreement between Coinmach and Bridge before Grayco bought the Regatta Apartments. Before the closing, Grayco admitted seeing the Memorandum of the 2002 lease, which was duly recorded in the Travis County public records. (Brief of Appellant at 18). Also, the general warranty deed to Grayco specifically referenced the Memorandum of the 2002 lease as an exception to the warranty and conveyance. In fact, the list of exceptions to the deed included two separate leases — the 1992 "Lease Agreement dated March 11, 1992" between De Narde and McNair, *and* the "Memorandum of Lease dated March 18, 2003" between Bridge and Coinmach. (D. Ex. 11 [GP 000426]). The Memorandum stated that copies of the 2002 lease were on file at the respective offices of Coinmach and Bridge and provided Coinmach's Austin address. (D. Ex. 4). Yet, Grayco never asked for a copy before closing.

So, regardless of what Grayco "believed" or "assumed," it had notice of the existence of "a lease" between Coinmach and Bridge before closing. The trial court correctly found that Grayco's "belief" was *unreasonable*, for when, as in this case, a party knows of facts, which, if reasonably pursued, would disclose the existence of an unrecorded encumbrance, that party is charged with notice of and bound by the encumbrance. *See* cases cited at page 18 of the Brief of Appellant. The trial court reasonably found Grayco's failure to pursue the information disclosed in the

15

Memorandum, including *not* asking Coinmach or Bridge for a copy of the 2002 lease, to be inexcusable.

Grayco contends that the Memorandum did not identify the 2002 lease and that the 2002 lease lay outside the chain of title. (Brief of Appellant at 19, 20). None of this is true. The Memorandum, *on its face*, refers to a lease between "**BRIDGE MANAGEMENT CO.**," as "**LESSOR** of the premises commonly known as **REGATTA APTS**, located at **1201 TOWN CREEK DR., AUSTIN, TX. 78741**" and "**COINMACH CORPORATON**, as Lessee . . ." This lease is part of the chain of title to the Regatta Apartments.[14] A review of the first paragraph of the 1992 lease shows it to be a lease between "De Narde Construction Co." and "McNair Coin Laundry Co." *The Memorandum makes no mention of the 1992 lease or of De Narde or McNair*. Grayco's argument that the 1992 DeNarde-McNair lease was the same lease as the 2002 Coinmach-Bridge lease is unsupported by any credible evidence. The reference in the Memorandum of a lease between Bridge and Coinmach indisputably put Grayco on notice of a lease between those entities. Grayco's failure to pursue this information does not relieve it of constructive notice of the 2002 lease and the Supplemental Agreement to it.

---

[14] Recording a memorandum of lease instead of the lease itself is a common practice in the leasing industry. Filing the memorandum in the deed records places the lease in the chain of title.

Throughout its brief, Grayco complains that the seller failed to disclose the existence of the 2002 lease. (Brief of Appellant at 18, 19, 21).[15] But what the seller did or did not disclose to Grayco is irrelevant to this case. Grayco admits knowing of the Memorandum but did absolutely nothing to follow up on the information disclosed by it – even failing to ask the seller or Coinmach for a copy of the 2002 lease.

## II. *Grayco was on notice of the 2002 lease because of Coinmach's possession of the laundry rooms.*

In *Beutell v. United Coin Meter Co.*, 462 S.W.2d 334, 335 (Tex. Civ. App.—Waco 1970, writ ref'd n.r.e.), the purchaser of an apartment complex argued that it was not bound by an "unrecorded" laundry room lease executed by the prior owner of the property. The appellate court disagreed, holding that the purchaser was on notice of the lease and its terms because the laundry company's laundry equipment was in the laundry room before closing.

Here, legally and factually sufficient evidence establishes that Coinmach's laundry machines were in the laundry rooms of the Regatta Apartments when Grayco closed on its purchase of the Apartments. Grayco's managing agent,

---

[15] The trial court was entitled to conclude that the credibility of Grayco's assertion about the seller's failure to disclose the 2002 lease was undermined by Grayco's failure to sue the seller for the alleged non-disclosure. (RR 97).

Greystar, had already contacted Coinmach *before closing*. *See* D. Ex. 9 (acknowledging that "Coinmach has the contract on the laundry rooms"). Grayco produced no evidence that the laundry machines in the laundry rooms belonged to McNair, the lessee under the 1992 lease. Thus, Grayco knew before closing that Coinmach's laundry machines were in the laundry rooms at the Apartments, which under *Beutell*, placed Grayco on notice of the terms of the 2002 lease and the Supplemental Agreement to that lease.

Grayco argues that it did not know of the 2002 lease until after this dispute arose in late 2007 and early 2008. (Brief of Appellant at 19). But the evidence shows otherwise. That Grayco knew of the 2002 lease and the Supplemental Agreement *before* closing and was contemplating an early termination of the lease is shown by Defendant's Exhibit 9 and by the testimony of Grayco's managing agent at the Regatta Apartments, Savanna Sharpe-Bogardus of Greystar.

Defendant's Exhibit 9 is an email dated April 17, 2007 – which is several weeks before closing – sent by Bogardus and produced by Grayco to Coinmach as Bates No. GP 000076. Bogardus testified that she knew that Coinmach had the "laundry service contract with the prior ownership of Regatta . . . and when the property sold, the contract went to Grayco." (Bogardus Dep. at 15, 16-17). Handwritten notes on the produced email reference when the 2002 lease was due to

18

expire, "lost revenue," and the lease bonus/decoration allowance of $14,000.00.[16] The 1992 lease expired in 2002 and did *not* provide for a lease bonus/decoration allowance, a formula for calculating a refund of the allowance, or mention "lost" income or revenue in the event of a breach by the lessor. However, the Supplemental Agreement to the 2002 lease references "lost income" in the event the lessor breached the 2002 lease and provides the formula for refunding a prorated share of the bonus/decoration allowance.

## III. *Legally and factually sufficient evidence shows that Grayco breached the 2002 lease by wrongfully terminating it before to its expiration.*

Grayco contends that even if it is not a bona fide purchaser, the trial court's judgment still must be reversed because, Grayco argues, the 2002 lease contained no express provisions prohibiting it from closing the Regatta Apartments before the lease expired in 2012, requiring it to maintain a certain number of occupants, or requiring it to use its best efforts to ensure that tenants used the laundry rooms. (Brief of Appellant at 25). Grayco also asserts that "Coinmach failed to identify a single term, clause, condition or obligation in the 2002 Lease that Grayco breached." (*Id.*). Grayco's arguments are meritless.

---

[16] Grayco claimed at trial that the email's author did not write the handwritten notes on the email. But Grayco produced no evidence showing when or who wrote the notes. Because Grayco had custody of the email and produced it to Coinmach with the handwritten notes on it, the trial court was entitled to conclude that the notes were made contemporaneously with the sending of the email before the closing.

The 2002 lease was for a ten-year term, ending March 4, 2012. The lease provided that Coinmach would "receive as minimum compensation $45.00 per machine, per month" and that Coinmach and the lessor would equally divide the monthly gross receipts if the minimum compensation figure had been achieved. (D. Ex. 2, ¶ 2 [GP 000004]).

The lease also provided that Coinmach would have "exclusive and quiet use, possession and enjoyment" of the leased premises during the lease term, and that the lessor would "clean and maintain the premises" and all facilities required to properly operate the washing machines. (RR 16-17; D. Ex. 2, ¶¶ 3, 6 [GP 000004]). The lessor retained *no* right to terminate the lease before the expiration of the ten-year term. Nor did the 2002 lease contain any provisions exempting the lessor from liability if its actions caused or resulted in the early termination of the lease.[17]

Grayco's unauthorized early termination of the 2002 lease and its decision to demolish the Regatta Apartments before the lease term expired constituted breaches of the lease and a constructive eviction of Coinmach from the leased premises. *Silberstein v. Laibovitz,* 200 S.W.2d 647, 649 (Tex. Civ. App. −Austin

---

[17] Only Coinmach had the right to terminate the lease prior to its expiration. (D. Ex. 2, ¶ 9 [GP 000005]). However, Coinmach never exercised that right.

1947, no writ) ("If the landlord's conduct be such as to materially and permanently interfere with the beneficial use of the premises and the [tenant] leaves as the result thereof, then there is a constructive eviction.").[18]

Grayco's actions interfered with and permanently deprived Coinmach of the "quiet use, possession and enjoyment of the premises leased herein during the Lease term," and destroyed Coinmach's ability to generate income from laundry operations on those premises. Grayco's demolition of the Apartments together with its failure to keep the laundry room premises clean and maintained in proper condition constituted actionable breaches of the lease. *See Birkenfeld v. Metro General Management, Inc.*, 2008 WL 696174 *5 (Tex. App. – Amarillo 2008, no pet.) ("[T]he law expressly grants the lessee a right to enjoy that which he leased without impermissible interference from the lessor."); *Kerrville HRH, Inc. v. City of Kerrville,* 803 S.W.2d 377, 386 (Tex. App. – San Antonio 1990, writ denied) ("A tenant may recover profits lost as a proximate result of an action wrong that

---

[18] The elements of a breach of the covenant of quiet enjoyment are the same as the elements of a constructive eviction. *Daftary v. Prestonwood Market Square,* 404 S.W.3d 807, 816 (Tex. App. – Dallas 2013, pet. denied). Those elements are (1) the landlord's intention that the tenant no longer enjoy the leased premises; (2) a material act by the landlord that substantially interferes with the intended use and enjoyment of the premises; (3) the act permanently deprives the tenant of the use and enjoyment of the premises; and (4) the tenant abandons the premises within a reasonable time after the commission of the act. *Coleman v. Rotana, Inc.,* 778 S.W.2d 867, 872 (Tex. App. – Dallas 1989, writ denied). As shown above, Coinmach produced legally and factually sufficient evidence proving all those elements.

21

interferes with its business."); *Silberstein v. Laibovitz,* 200 S.W.2d at 650 ("It is settled law that a tenant wrongfully evicted, or his possession wrongfully interfered with, may recover lost profits as damages.").

Also, a duty to cooperate is implied in every contract in which cooperation is necessary for performance of the contract and the accomplishment of its purpose. This implied duty requires that a contracting party not hinder, prevent, or interfere with the other contracting party's ability to perform its duties under the contract. *See Case Corp. v. Hi-Class Business Sys. of Am., Inc.,* 184 S.W.3d 760, 770 (Tex. App. – Dallas 2005, no pet.). Here, Grayco's breaches of the lease covenants hindered, interfered with, and ultimately made it impossible for Coinmach to generate laundry income on the leased premises, both for itself and for Grayco.

Under these circumstances, the trial court properly held Grayco liable for breaching both the express and implied terms of the 2002 lease.

Issue No. 3 (Restated)

> Does legally and factually sufficient evidence support the trial court's finding that Coinmach suffered damages resulting from Grayco's breach of the lease with Coinmach? (In response to Appellant's Issue 3).

Issue No. 4 (Restated)

> Does legally and factually sufficient evidence support the trial court's damages award to Coinmach? (In response to Appellant's Issue 4).

22

## Argument and Authorities Under Issues 3 and 4

Grayco attacks the trial court's actual damages award on various grounds, none of which is meritorious. Legally and factually sufficient evidence supports the award.

First, Grayco argues that the 2002 lease did not guarantee any revenue or profits and therefore Coinmach is not entitled to recover any damages. (Brief of Appellant at 28). The absence of such a provision, however, does *not* mean that Coinmach failed to incur compensable damages as the proximate result of Grayco's breach of the 2002 lease. The collection and cost data in evidence shows that Coinmach's laundry machines produced substantial income and profits *before* Grayco contracted to buy the Regatta Apartments and began winding down leasing operations and failing to clean and maintain the laundry rooms. Grayco admits this fact. (Brief of Appellant at 28, 30, n. 5; D. Ex. 25). Grayco's actions in not keeping the laundry rooms clean and maintained and in not renewing leases at the Apartments caused the laundry income to decline.[19] Grayco's decision to

---

[19] Grayco asserts that the Regatta Apartments were "beyond saving" because of "vagrancy, vandalism, crime, and significant deferred maintenance issues." (Brief of Appellant at 7). The evidence contradicts this assertion. Grayco's agent, Grayco Partners, entered into the real estate contract to buy the Regatta Apartments on December 6, 2006, for $6.9 million dollars. (D. Ex. 5, ¶ 3 [GP 000364]). The contract provided for a 45-day feasibility period in which Grayco Partners could "complete any and all inspections, studies, or assessments of the Property (including all improvements and fixtures) desired by Buyer." (D. Ex. 5, ¶ 7 [GP 000366]). The contract also

23

terminate the lease and demolish the Apartments made the generation of any further income from the laundry rooms impossible. The absence of a "guaranteed" revenue or income stream did *not* give Grayco the right to breach its covenants and make the generation of income impossible.

Second, Grayco contends that the trial court's lost profits award is too speculative because, Grayco asserts, the court had no "reasonable basis to assume that there would have been tenants at Regatta, or that any tenants there would be willing and able to use the laundry machines through the expiration of the 2002 Lease." (Brief of Appellant at 31). That is untrue.

Collection and cost data on which Coinmach's damages expert relied showed that the laundry room equipment at the Regatta Apartments generated "substantial" income and profits when the lessor was honoring the lease covenants

allowed Grayco Partners to view the interiors of the apartment units and gave it access to all the leases affecting and pertaining to the Apartments. (*Id.*) The parties later extended the feasibility period to February 19, 2007, and expanded the buyer's right of inspection so that "Purchaser and its consultants may access the interior of the buildings on the Property for further inspection and for obtaining samples of the interior building materials." (D. Ex. 7). After the feasibility period expired, Grayco Partners assigned the contract to Grayco, and Grayco bought the Apartments. (D. Ex. 10, 11). Nothing in the evidence suggests that Grayco paid less than the $6.9 million price for the Apartments. Also, at about the same time, Grayco bought the Shoreline Apartments "directly across the street" from the Regatta Apartments. (RR 92). Grayco "had a lot of success at Shoreline maintaining occupancy. . ." and kept that apartment complex operating for three years after Grayco demolished the Regatta Apartments. (RR 92, 93). This evidence refutes Grayco's assertion that the Regatta Apartments were located in a crime-ridden area and "beyond saving." The trial court was entitled to conclude that Grayco simply did not want to spend the money necessary to maintain the Regatta Apartments in a proper condition and to reduce the vagrancy, vandalism, and crime occurring there.

and operating the Apartments in a normal fashion. However, things began to change when Grayco entered the picture. Grayco's agent, Grayco Partners, required the seller to stop entering into any new apartment leases or renewing any such leases for terms of more than six months. The trial court therefore had a reasonable basis to assume that the laundry rooms would have continued to generate substantial income and profits if Grayco had not breached the lease.

Third, Grayco argues Kemmerer's lost profits calculation is unreliable and unsustainable because, Grayco says, he "incorrectly determined that Coinmach's damages began to accrue in March 2006," before Grayco terminated the lease effective October 31, 2007. (Brief of Appellant at 32, 34, 36). Grayco is mistaken.

Kemmerer prepared a lost profit calculations for the period March 14, 2006 through October 25, 2007. (P. Ex. 7, ¶ 11). However, the trial court did *not* include that calculation in its final judgment, and Coinmach has *not* appealed that decision. The trial court accepted the lost profits calculation that Kemmerer prepared for the period beginning with the date of lease termination, October 31, 2007, and ending with the expiration of the lease term, March 4, 2012.

Grayco attacks as "arbitrary" Kemmerer's daily collection rate of $99.81, which he used to calculate the lost net profits the trial court awarded. (Brief of Appellant at 38). This rate was derived from daily collections generated by the

25

laundry machines at the Regatta Apartments during the period from December 22, 2004, through March 1, 2007. (P. Ex. 7). Kemmerer's rate is not arbitrary. It is based on reliable collection and cost data generated over a period of normal laundry room operations at the Regatta Apartments. (RR 57, 62, 64). Kemmerer did not use collection and cost data generated after March 1, 2006, because the owner of the Apartments was preparing to sell the property to Grayco's agent, Grayco Partners, which indicated that Grayco wanted to terminate the 2002 lease and change the use of the property. (RR 43, 53, 54, 55, 58, 62, 69; P Ex. 7 ¶ 5). Furthermore, under the real estate contract entered into in December 2006 with Grayco Partners, the owner was required not to enter into any residential leases (new or renewed) for terms of more than six months. (D. Ex. 5 [GP 000368).

Based on these facts, the trial court was entitled to accept Kemmerer's daily collection rate of $99.81 as sound basis for estimating the net profits lost to Coinmach. "It is not necessary that profits be susceptible to exact calculation; it is sufficient that there is evidence from which they can be determined with a reasonable degree of certainty." *Kerrville HRH, Inc.,* 803 S.W.2d at 386. The lost net profits award meets this test.

Grayco also contends that the trial court incorrectly accepted Kemmerer's calculation of the reimbursement due under the Supplemental Agreement for the

lease bonus/decoration allowance. (Brief of Appellant at 37). Grayco does not challenge the correctness of the calculation, but argues that it cannot be held liable because it was never a party to the Supplemental Agreement. However, as shown above, Grayco became bound by the terms of the Supplemental Agreement, including its reimbursement terms, when it acquired the Regatta Apartments with notice of the 2002 lease.

## CONCLUSION AND PRAYER

For the foregoing reasons, Coinmach prays that this Court affirm the trial court's judgment in all respects. Coinmach also prays that it be awarded such other and further relief, at law or in equity, to which it may be entitled.

Respectfully submitted,

LAW OFFICES OF
R. KEMP KASLING, P.C.
R. Kemp Kasling
State Bar No. 11104800
301 Congress Ave., Suite 300
Austin, Texas 78701
Telephone: (512) 472-6800
Facsimile: (512) 472-6823
kkasling@khdalaw.com

CARDWELL, HART & BENNETT, LLP
J. Bruce Bennett
State Bar No. 02145500
807 Brazos, Suite 1001
Austin, Texas 78701
Telephone: (512) 322-0011
Facsimile: (512) 322-0808
jbb.chblaw@sbcglobal.net

By: */s/ R. Kemp Kasling*
R. Kemp Kasling

ATTORNEYS FOR APPELLEE

27

## CERTIFICATE OF COMPLIANCE WITH RULE 9.4

Pursuant to Tex. R. App. P. 9.4(i)(3), the undersigned certifies this brief complies with the type-volume limitations of Tex. R. App. P. 9.4(i)(2)(B). The brief was prepared using Microsoft Word 2011, and according to the program's word count, the brief contains 5,238 words, exclusive of the exempted portions in Tex. R. App. P. 9.4(i)(1).

*/s/ J. Bruce Bennett*
J. Bruce Bennett

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been sent on this 27th day of May 2015, by electronic means to the following counsel of record:

Frederick T. Johnson
Cody W. Stafford
Akilah F. Craig
DOBROWSKI, LARKIN & JOHNSON, LLP
4601 Washington Ave., Suite 300
Houston, Texas 77007

Attorneys for Appellant

*/s/ J. Bruce Bennett*
J. Bruce Bennett